OBADIAH ARNOLD, plaintiff in error, *vs.* EZEKIEL TRICE, defendant in error.

1. Gross inadequacy of consideration is a good reason why a Court of Equity will not decree a specific performance of a parol contract for the sale of land.

2. When the consideration of a parol contract for the sale of land was a slave, and there is no other equity save the delivery of the consideration, the Courts of this State have, under the 7th clause of the 17th section of the Constitution of 1868, no jurisdiction to enforce its specific performance. WARNER, J., dissenting.

Jurisdiction over slave contract. Specific performance. Before Judge ROBINSON. Baldwin Superior Court. August Adjourned Term, 1868.

Trice, by his bill in equity, filed in 1867, averred that in 1864 he owned a slave, and Arnold owned a lot of land, and he and Arnold agreed upon a swap of one for the other; the slave was working with Arnold at the time, and pursuant to this trade, Arnold kept the slave, and Trice took possession of the land by putting a tenant on it; the slave was thenceforward known as Arnold's, and the land as Trice's. No titles were made at the time, and Arnold put him off, from time to time, saying the deed to himself was misplaced, and when he found it he would make the deed; that he so put Trice off his guard till 1867, when he procured Trice's tenant to attorn to himself, and absolutely refused to make said deed, pretending there never was any such trade. He prayed that Arnold should be compelled to convey to him the land, and that he should have possession of it. He prayed, also, for discovery as to all of said averrments, putting the usual interrogatories. The bill was demurred to for want of equity. The demurrer was overruled, and Arnold answered.

Arnold denied the trade, admitted that Trice proposed it, but said his only reply was, "Do you think I would swap my land for a free negro?" Said that Trice's slave was hired by him as a day laborer, at two dollars *per diem* in Confederate currency, and ran away with Sherman's army; that Trice was providing for the comfort of two women, whose

husbands were in the army, and asked him to allow him to put one of them, and her children, in the house on said land, and he consented ; that she moved there, and was there when her husband came home and went to live with her ; that in this way the husband, said tenant, got possession ; that because the tenant was poor, the rent of little value, etc., he took no notice of it till Trice set up this claim to his land, and then he got attornment by simply asking the tenant for it.

When the cause came on for hearing, defendant's solicitors moved to dismiss the bill, because of the prohibition against such debts in the 7th clause of the 17th section of the 5th article of the Constitution of 1868. This motion was overruled.

Complainant's solicitors read the bill and answer to the jury, introduced complainant, who, as a witness, re-asserted the allegations in his bill, and denied the statements of the answer so far as material, and that defendant agreed, in 1866, to still for him the peaches grown on said premises. Four witnesses testified, that on different occasions they heard Trice say he sold said land to Arnold for a negro. The tenant testified that, returning from the army and finding his wife there, he occupied the premises and remained for nearly three years, to-wit: 1865, 1866 and 1867, as tenant of complainant, paying him rent.

The jury found for the complainant, and it was decreed that Arnold should convey to Trice the premises, and that Arnold should have possession of them.

Defendant's solicitors moved for a new trial, upon the grounds that the Court erred in not dismissing the cause, and because the verdict is contrary to law and against the evidence, etc. The new trial was refused and this is assigned as error.

WILLIAM McKINLEY, KENON & KENON, for plaintiff in error, relied on the 7th clause of the 17th section of article 5 of the Constitution of Georgia, (1868.)

IVERSON L. HARRIS and L. H. BRISCOE, by the Reporter, for defendant in error, replied that the said part of the Constitution of 1868 was contrary to the Constitution of the United States, and that this case was not covered by said section of the Constitution of 1868, the contract being executed; cited Irwin's Code, sections 1952, 1953; Watkins vs. Watkins, 24th Ga. R., 402; Alderman vs. Chester, 34th Ga. R., 159; Gilmore vs. Johnson, 14th Ga. R., 683; Black vs. Black, 15th Ga. R., 445. As to the weight of the complainant's testimony, cited A. & W. P. R. R. Co. vs. Hodnett, 36th Ga. R., and Only vs. Walker, 3d Atkins; Classon vs. Morris, 10th John's R., as to corroboration by admissions, etc.

McCAY, J.

The proof in this record is strong that there was a contract between the complainant and defendant in the bill for the sale of the land in dispute. Indeed, that point is beyond a doubt. But it is admitted by the bill itself that the contract was not in writing, and the point in the case, even as set up in the bill, is, that there was such a part performance of the parol contract as takes the case out of the Statute of Frauds, and as brings it within that class of cases where a Court of Equity, for the purpose of preventing a fraud, will enforce the contract, even though it fails to come up to the requirements of the statute.

It is charged in the bill that there was, a complete performance of the contract on both sides, except as to the single act of making a deed by Arnold to Trice for the land, that Trice delivered the consideration, and went into possession, and that nothing was left to be done except making the deed. Is this made out by the proof? That, independently of the question of jurisdiction and adequacy of consideration, is an essential point in the case. Indeed, however strong the proof of the *contract* may be, the complainant must fail unless he proves the part performance, since the contract itself is of no avail, because, as admitted by the bill, it was not in writing.

The complainant was himself a witness, and sustained, by his evidence, the charges in the bill, and the defendant, by his answer, denied them in almost every particular.   By the established rule in equity the answer is worth more than the evidence of one witness, and will, as to any fact, outweigh one witness.   There must be other evidence equal to a witness. Was there in this case, on the necessary facts to be proven, to-wit: on the question of part performance, the delivery of the negro, and the taking possession under the contract, such evidence as, under the rule we have alluded to, overcame the answer?   There is but one other witness on these points, to-wit: Brake.   *All* the other witnesses confine themselves to the *contract*.   They only testify that they heard Arnold say he had sold Trice his land for the negro, or a negro.   Brake, the only other witness, and the only one who testifies a word about the possession, says, when he returned from the war he found his wife in possession.   He does not say who put her in.   He adds, that he lived on the place in 1865, 1866 and 1867; that he considered himself Trice's tenant during this time, but on a dispute arising, he agreed with Arnold to hold under him.   This is all, except what Trice himself says, and which the answer denies *in toto*.

It is admitted by both parties that the negro was *hired* to Arnold at the time of the contract, that no written conveyance of the title to the negro was ever made.   The contract is charged in the bill to have been made on the 19th of October, 1864, while the negro was in Arnold's possession, working for Arnold by the day, but lodging at Trice's, his owner; and that in November, 1864, about a month after the contract, he went off with Sherman's army, as it passed through the country, and has since been emancipated.   So much as to the delivery of the negro, affirmed on one side, denied positively by the other, and no proof whatever from any other source on the subject.   So as to the delivery of the possession of the land.   Trice swears positively that he put Brake in possession as his tenant.   This the answer positively denies, and says that Trice asked his permission to let Mrs. Brake, whose husband was away in the war, reside in

the house, and that he did this as a mere favor to her. Brake himself says, that when he returned, he found his wife in possession. I do not think this proof overcomes the answer. Outside of the one witness, the complainant, there is absolutely no evidence of the transfer of even the possession of the negro; and as to the possession of the land, there is no evidence of that, except the complainant's testimony, directly contradicted by the answer; and Brake's testimony is perfectly consistent with the statement of either. As to who Brake at first considered himself the tenant of, it will hardly be contended that his thoughts, derived, perhaps, from Trice's own statements to him, are *evidence.*

The verdict of the jury is, therefore, in my judgment, contrary to law, because it allows the unsupported testimony of one witness, and that the complainant in the bill, to overcome the answer of the defendant, on the very turning point of the whole case, made in direct response to the charges in the bill.

1. But a Court of Equity will never decree a specific performance of a parol contract for land when the consideration of the contract is inadequate. The Statute of Frauds requires a contract for the sale of real estate to be in writing. At law the contract can not be enforced, it is void, contrary to law. But a Court of Equity will not allow gross injustice and fraud, even though to prevent it, it must set up a contract in the teeth of the statute. The whole jurisdiction of a Court of Equity to interpose, turns not upon the contract, but upon the fact that the parties have so *altered* their condition by the trust which the buyer has reposed in the seller, that it would be a gross fraud to set up the statute, and this can never be the case when the consideration is grossly inadequate. What is the case here? Two hundred acres of land are sold in October, 1864, for a negro fellow, within a month before Sherman swept as a besom of destruction through the State, after the fall of Atlanta, when a negro fellow was not, in any portion of the State, worth fifty dollars in gold. It is as strong a case of inadequate consideration as I have met with. The consent of the parties does

not mend the matter. It will be no fraud on Trice to let the parties stay as they are. He is not so injured, by his trust in Arnold, as to call upon the Courts, in their horror of fraud, to override that express statute which requires contracts in relation to land to be in writing. One cannot but feel that the wrong is on the other side, and if Trice should recover at all, it is because of his *right* to have the express terms of his contract enforced. As we have seen, *this* is not the ground of the power assumed by a Court of Equity to grant relief in such cases. The contract is not what that Court goes upon. It is the fact that the contract has been used by the defendant as an instrument of fraud. Our Code, section 3134, says that *mere inadequacy* of price is sufficient to justify a refusal to decree specific performance, or any other fact showing the contract to be unjust, unfair, or against good conscience. In my judgment this is such a case. No negro, in the judgment of any man of ordinary sense, in the exercise of his wits, was worth in October, 1864, any thing like the value of this land, and the consideration is not only inadequate, but outrageously so.

2. But this is an attempt to "enforce a contract, the consideration of which is a slave." Has it any other? Does not the claim of Trice all turn on his allegation that he sold to the defendant his slave? Is not that the price, the value, the transfer of the slave, the whole consideration of the contract set up? We think it is, and for the reasons given in *Shorter vs. Cobb*, at this term, we hold that the Court had no jurisdiction to enforce it.

Judgment reversed.

BROWN, C. J., concurred as follows:

In this case a slave was exchanged for a tract of land, and possession delivered, but no written agreement entered into, and no title executed, and the slave left with General Sherman's army a few days after the trade. The former owner of the slave now files his bill for specific performance to compel the other party to execute titles to the land in considera-

Arnold *vs.* Trice.

tion of the exchange for said slave.    Upon this state of facts I hold that the Courts, under the new State Constitution, can neither entertain the bill nor grant the relief.

WARNER, J., dissenting.

In my judgment, the Superior Court had jurisdiction to hear and determine this cause under the provisions of the third section of the fifth article of the Constitution of 1868, and that the seventh paragraph of the seventeenth section of said fifth article does not defeat or deprive the Court of that jurisdiction.

The evidence in the record is quite sufficient to sustain the verdict.    The facts of the case should be viewed and considered from the standpoint which the parties occupied at the time the contract was made rather than at the time of the trial.    Arnold made the trade with Trice with a full knowledge of the then *present status* of the slave, as well as to what would be his probable *future status*.    Indeed, he took the risk, and if, as one of the witnesses state, he said " he was a fool for making the trade," no one is to blame for his folly but himself, and he should now be content to abide the result. If his "*foresights*" were not as good as his "*hindsights*" in regard to the value of slave property, that was his misfortune, for which the Courts cannot grant relief.    In the absence of fraud, Courts do not interfere with the contracts of parties, or relieve them from the consequences of their own folly, but should require them in good faith to perform them, as I think the jury have done in this case.    I am therefore of the opinion that the judgment of the Court below should be ffirmed.