[No. 1,648.]

# LOUIS BRUCK AND ISADORA B., HIS WIFE, v. REASON P. TUCKER ET AL.

TITLE AS DEFENSE, AFTER GENERAL ISSUE PLEADED.—Where, in an action of ejectment, the defendant pleads the general issue and then sets up title in himself, the plea of title amounts to nothing whatever, and may be omitted.

IMPROPER DEFENSE IN EJECTMENT. — B. sued T. in ejectment, claiming title under a devise of Bale; T. plead the general issue and interposed another defense setting out an alleged agreement by Bale, before his death, to convey the premises (as soon as a Government surveyor could be obtained to survey the land) to K., the grantor of T., provided K. would bind himself to reserve certain timber for Bale, not to keep wild cattle on the place, and to do all the work he could at Bale's sawmill at current wages. *Held*, first, that as a defense at law the pleading is not to be supported; second, that as a defense in equity it was insufficient, because it failed to show by direct and proper averment that the consideration Bale was to receive was adequate in amount, and not disproportionate to the value of the lands to be conveyed..

EQUITABLE DEFENSE IN AN ACTION AT LAW.—In setting up an equitable defense in an action at law the defendant becomes an actor and the defense interposed a pleading in equity, the sufficiency of which—in matters of substance, though not in point of mere form—is to be determined by the application of the rules of pleading observed in Courts of equity, when relief is sought there in cases of like character.

SUIT FOR SPECIFIC PERFORMANCE OF AGREEMENT TO CONVEY LANDS.— In a suit for a specific performance of an agreement to convey lands, the agreement must be one which in all its features appeals to the judicial discretion as being fit to be enforced in specie, as having been obtained without any intermixture of unfairness.

CONSTRUCTION OF WILL A QUESTION OF LAW FOR THE COURT. — The construction of a devise, like that of a contract in writing, is always a matter of law, and is therefore never to be submitted to a jury.

DEVISE IN WILL CONSTRUED.—Where a devisor, having but one flour mill, made a devise in these words: "To my daughter, Lolita, the flour mill with the land appertaining thereto—a half league, more or less:" *held*, that the language was sufficiently accurate in expression and certain in its application to the subject of the devise.

APPEAL from the District Court of the Seventh Judicial District, Napa County.

Dr. E. T. Bale, who was a grantee from the Mexican Government of a rancho in Napa Valley, called Carne Humana, or Coljolwanoc, died in 1849, leaving a will in which there is this clause:

"Para mi hija Lolita [Isidora]. El molino de harina y todo el terreno, etc., que pertinece a dicho molino, media legua, mas o menos."

[To my daughter Lolita. The flour mill and all the land, etc., which pertains to said mill, a half league, more or less.]

The rancho contained four leagues of land, and stretched about fifteen miles up Napa Valley, the Napa River running through its whole length. At the upper end of the rancho was a tract sold to Fowler; next below that was a tract sold to Kilburn, bounded on its lower side by a creek; then came the tract of land in controversy; and below that a tract sold to Kellogg, bounded on the north by a creek. Below Kellogg was another tract, in which stood a sawmill, and this tract was given by the will to another daughter, Mrs. Krug. Below that was land sold to Hudson.

The two small tracts were bounded similarly, that is, by the exterior boundaries of the rancho, on two sides, and above and below by land which had been sold to other parties.

The whole tract upon which the flour mill stood, bounded on each side by the lateral limits of the rancho, and north by Kilburn and south by Kellogg, contained eleven hundred and sixty-nine acres, while a half league contains twenty-two hundred; that is, the entire tract does not contain the quantity which is called for by the will.

A portion of this tract, about two thirds of the land on the west side of the river, was at the date of the will and up to the time of his death, in controversy between Bale and Kilburn, on one side, and one Barnett on the other; and

the defendant Stark was on the part on the east side of the river.

On a former trial the case was submitted to a jury, who were in effect charged that if they were in doubt as to the intent they should find for the defendants, which they did. On appeal, the judgment was reversed by the Supreme Court, and the cause remanded for a new trial. (See 32 Cal. 424.) At the new trial the plaintiff had judgment, and the defendants appeal.

The other facts are stated in the opinion.

*Hartson & Burnell* and *Thomas P. Stoney*, for Appellants, argued that it was the intention of the testator to convey only the tract on the west side of the river, below the Barnett line, containing about two hundred acres; and that the question was one of fact—of boundaries—to be determined by the jury.

*B. S. Brooks* and *W. W. Pendegast*, for Respondents, argued that the testator intended, and that it is the true construction of the will, to convey the whole tract; also, that the question involved is one of law, of construction simply, to be determined by the Court.

By the Court, WALLACE, J.:

The controversy in this case grows out of a devise contained in the will of Dr. Bale, made and published in 1849, in the following words: "To my daughter, Lolita, the flour mill, with the land pertaining thereto—a half league, more or less."

The complaint, not verified, is in the form usual in actions for the recovery of lands. The defendants pleaded the general issue, and, also, as a second defense, set up title in themselves—which second defense, it may be here remarked, in view of the general issue already pleaded,

amounted to nothing (*Marshall* v. *Shafter*, 32 Cal. 176), and might, therefore, as well have been omitted.

The cause was before this Court upon a former appeal some four years since (32 Cal. 424), when the judgment the defendants had then obtained below was reversed here, and the cause remanded for a new trial. Upon its return to the Court below, the defendants added to their answer a third defense, as follows:

"And for another and further answer, defendants allege that the premises described in the complaint are a portion of the Bale Rancho, formerly granted by the Mexican Government to Edward T. Bale, the father of Isadora B. Bruck (one of the plaintiffs), and under whom the plaintiffs claim title thereto; that on the 15th day of March, 1847, and while the said Bale was seized in fee, and possessed of the premises, he, the said Bale, and one R. L. Kilburn, entered into an agreement with one E. Barnett, for a valuable consideration by them received from said Barnett, for the conveyance to said Barnett of the premises in possession of the parties defendant in this suit, and also an adjoining tract of land then owned and possessed by the said R. L. Kilburn; which said agreement was in writing, in the words and figures following, to wit: 'Know all men by these presents, that we, Edward T. Bale and R. L. Kilburn, of Napa, California, are held and firmly bound unto E. Barnett, of the same, for the following, to wit: We oblige and bind ourselves, our heirs and assigns, for value received, to make and deliver to the said Barnett a good quitclaim deed for a certain tract or parcel of land, on which he now resides, as more particularly specified by the metes and bounds as admitted by us before John Conn and Peter Storm, as soon as Government surveyors can be obtained to survey said land, provided the said Barnett shall bind himself to conform to the following agreement: that all the timber, ex-

cept fencing timber, and such other as shall be required for improvement on said land, be reserved for us; and that no wild mares or other wild cattle be kept on the place, or in the vicinity, by said Barnett or his assigns. The said Barnett, moreover, binds himself to do all the work he can at the sawmill at current wages. Given under our hands and seals this 15th day of March, 1847. (Signed) EDWARD T. BALE, R. L. KILBURN.' "

" That the said Barnett thence continued in possession of the premises described in the complaint, now in the possession of the defendants in this suit, until some time after the death of said E. T. Bale, and that the said Barnett duly performed all the covenants and conditions in said instrument provided to be performed by him, and became and was entitled to a conveyance of the tract so agreed to be conveyed, embracing the lands now in possession of defendants, before the death of said Bale; that said Barnett subsequently thereto, and before the commencement of this suit, conveyed to the grantor of the defendant, Reason P. Tucker, all his right, title, and interest in and to said instrument, as well as in and to the premises described therein, including the premises now in the defendant John S. Stark, as aforesaid. And defendants allege that the said Reason P. Tucker thereafter, for a valuable consideration, acquired title to the same, and as successor in interest of said Barnett, is entitled to the premises against the said Bale, or any person claiming the same under him. That the plaintiffs claim title to the premises under the will of said Bale, the father of the plaintiff, Isadora B. Bruck; and defendants allege that at the time of the making of said will the said Barnett was in possession of the premises, lawfully holding the same under the said instrument herein set forth, and that the said Bale was not seized of any estate in the premises which he could devise to his said daughter."

The answer concluded with a prayer that the defendants

might have separate trials and recover several judgments for costs. To this third defense a demurrer interposed by the plaintiffs was sustained.

Before passing to the consideration of other points in the case, we will dispose of the one arising upon the action of the Court below had upon the demurrer to the third defense, and in so doing will consider that defense in two aspects: First, as a defense at law; second, as an equitable defense interposed in an action at law.

As a pure defense at law it cannot be supported upon any rule of pleading known to us. As merely challenging the alleged title of the plaintiffs, it, in view of the general issue already pleaded, amounted to nothing; not only alone for the reasons before assigned in reference to the second defense, but for others. It was a flagrant infringement of the fundamental rule that the facts are to be carefully distinguished, in pleading, from the mere evidence of the facts (*Green* v. *Palmer*, 15 Cal. 411); it was, therefore, to be demurred to, or even stricken out on mere motion. (*Patterson* v. *The Keystone Mining Company*, 30 Cal. 360.) It was probably interposed in this form because of the views of this Court expressed on the former appeal (in response to a petition for a rehearing), in the following language: "In the opinion delivered in this action we do not hold that any part of the mill tract passed to the devisee which the devisor conveyed, or *contracted to convey*, in his lifetime. The will, of course, operated only upon so much of the mill tract as legally and *equitably* belonged to Dr. Bale at the time of his death." The proposition of law maintained in this view was, that if it should be established on the new trial that Dr. Bale had parted with the equitable title to any portion of the lands which might otherwise be held to be included in the mill tract mentioned in the devise, then, as to such portion, the title of the plaintiffs claimed under the devise would be thereby, to that extent, defeated. The mere equity, if

shown to be out of the testator, whether vested in the defendants themselves, or outstanding in a stranger to the action, would, under the views then expressed, here defeat the otherwise sufficient title of the plaintiffs under the devise, with like effect as if it had been shown that the testator had conveyed the legal title in his lifetime. The result was, that under the general issue pleaded, the defendants were already at liberty to prove that Dr. Bale had parted with the *equitable* title to the lands in controversy, or some part thereof, whether in favor of the defendants or of a stranger to the action, made no sort of difference, and there was, therefore, no excuse for the interposition of the third defense in that aspect.

Second—If we look upon that defense as the allegation by the defendants of an *equity upon their* part to be relieved against what must, in this aspect of the case, be regarded as the legal title of the plaintiffs, it is, obviously, lacking in numerous matters of substance indispensable to the sufficiency of such a pleading. Of these, however, we will select but one—that it fails to show by direct and proper averment that the consideration which Bale and Kilburn were to receive was adequate in amount, and not disproportioned to the value of the lands they were to convey.

Since the enunciation of the views of this Court in relation to the setting up of an equitable defense in an action at law in the cases of *Estrada* v. *Murphy,* 19 Cal. 272, *Lestrade* v. *Barth,* 19 Cal. 660, *Blum* v. *Robertson,* 24 Cal. 127, *Downer* v. *Smith,* 24 Cal. 114, etc., it must be considered as settled, that in interposing such a defense the defendant becomes *actor,* and the defense interposed a pleading in equity, the sufficiency of which—in matters of substance, though not in point of mere form—is to be determined by the application of the rules of pleading observed in Courts of equity when relief is sought there in cases of a like character. Though, as we have seen, the equitable defense, as here in-

terposed, does not in form conclude with a prayer for affirmative relief touching the matters therein alleged, nor look to a decree, that the plaintiffs convey the legal title to the defendants, it nevertheless seeks to estop the plaintiffs by reason of the supposed equities of the defendants, as the beneficiaries of the Barnett bond therein set forth, from the further prosecution of their action at law, and so, in scope and substantial effect, it amounts to an application made to the Court, in the exercise of its equity powers, for a decree of specific performance of the executory contract to convey the lands mentioned in the bond.

It is well settled that an application made to a Court of equity to obtain relief of that character does not proceed *ex debito justitiæ*, as an action at law brought for the recovery of damages upon breach of such an agreement, but is addressed to the sound discretion of the Court, to be determined upon all the circumstances appearing. That the contract concerning which relief is sought is one sufficient in point of mere legal obligation—that it is supported by a *valuable* consideration paid, or agreed to be paid—that it is free from fraud or from such a degree of imposition or surprise upon the defendant as would support an application upon his part to set it aside entirely—these, and the like circumstances, though ordinarily indispensable, are yet far from sufficient, in themselves, as constituting a case invoking the relief—extraordinary in its character—sometimes administered by the Courts through the instrumentality of a decree for specific performance. The agreement alleged must be one which in all its features appeals to the judicial discretion as being fit to be enforced *in specie*—as having been obtained without any intermixture of unfairness. Hence, if it appear that the bargain, though obligatory in point of mere law, and one not to be set aside in equity, is, nevertheless, a

*hard bargain*, the Court will not relieve. Of such a bargain Lord HARDWICKE said: "The constant rule of the Court is not to carry it into execution." (1 Atk. 134.) The same view was asserted by the Chancellor in *Seymour* v. *Delancey*, 6 Johns. Ch. R. 222, where the value, which the complainant was to pay, was, by the estimate of the Court, a little less than one half that of the estate bargained for, and where the Chancellor, in dismissing the bill, said: "A Court of equity must be satisfied that the claim for a deed is fair and just and reasonable, and the contract equal in all its parts, and founded upon an adequate consideration, before it will interpose this extraordinary assistance."

The Court is to be *satisfied* that the contract is founded upon not merely a *valuable* but an *adequate* consideration. But how are we to be so satisfied here, where there is an absence of all averment upon the point? How are we to indulge the surmise that the defendant's case in this, or any respect, is better than they themselves have alleged it to be? "It is incumbent on every party who brings his case before a Court to state it with reasonable certainty * * * and this is peculiarly necessary upon a bill for a specific performance." (3 Rand. 228.)

The defense pleaded is to be construed *contra proferentem*. This is the general rule by which pleadings are construed in all cases. It is certain, however, that irrespective of this rule of construction, the defense, as it is pleaded here, wholly omits to aver the value of the lands bargained for, and the sum or value of the consideration therefor. There is nothing whatever disclosed by the defense, as pleaded, which would even *afford a basis for a comparison* of values or amounts. We leave out of view, of course, the recital contained in the bond, that it was for "*value received*," and the averment contained in the defense, that the agreement was made for "*a valuable consideration*"—they obviously

amount to nothing in aid of the pleading upon the point considered.

A trial being had upon the return of the cause to the Court below, after its disposition here on the former appeal, the plaintiffs recovered judgment, and from that judgment and an order denying their motion for a new trial the defendants bring the present appeal, and assign some eight supposed errors committed by the Court below, principally in the giving of some and the refusing of other instructions asked.

As we think, however, that the Court might have properly instructed the jury to find a verdict for the plaintiffs, it will not be necessary to inquire to what extent the verdict, as rendered, can be supposed to have been influenced by giving, or refusing to give, particular instructions asked.

The title of the plaintiffs is derived wholly through the devise already recited, and the controversy—the *quæstio ex qua*—turns wholly upon the interpretation which that devise is to receive—the construction which the Court ought to place upon it, in order to arrive at a correct solution of its meaning, and thus reach the *intention* of the testator, not his intention (if he could, indeed, be supposed to have one), *dehors* the instrument itself, but his intention *as embodied in*, and, therefore, to be *deduced from* the language he has employed in disposing of his property.

The construction of a devise, like that of a *contract in writing*, is always a matter of *law*, and is, therefore, never to be submitted to a jury. This is true, whether such construction is to be reached *ex visceribus* merely, or after proof of the circumstances surrounding the execution of the instrument to be construed—for these latter are but aids and facilities to be availed of in searching for the true sense in which the language has been used, and by the light of which the Court may hope to discover the meaning in-

tended, notwithstanding the obscurity of the expression in which it is couched.

The controversy is as to the subject of the devise—"*the land pertaining*" to the flour mill—*a half league, more or less.*" On the former appeal a construction was given to the devise, which, we think, virtually decided the cause in favor of the plaintiffs. The language which the testator used is not only accurate in expression, but is certain in its application to the subject of the devise. The subject of the devise is the *flour mill*, with "all the land pertaining thereto, a half league, more or less." If there had been two flour mills, each with land pertaining thereto, and of such an area as might be fairly designated as "*a half league, more or less*," then it might have been argued that there being *two distinct subjects found*, to each of which the *entire* description could be applied with an *equal* degree of accuracy, it would have resulted that the devise was ambiguous in the latent sense. But no such proposition can be asserted here, for no question is or could be made as to the flour mill referred to. The testator had but one. This being ascertained, we are next to seek for "*the land which pertains to said mill.*" This is land which bears some sort of relation to the mill. This relation may arise by reason of an inclosure separating a smaller tract upon which the mill is built from the general tract, or from the circumstance that a portion of the general tract, though uninclosed, has been in some way particularly devoted to the business or purposes of the mill; but it does not appear that there was any such inclosure, nor that any part of the general tract was especially used in connection with the mill. It is evident, therefore, under the circumstances appearing, that the testator used the word "pertains" (*pertenece*) in the sense of surrounding and *lying adjacent to* the mill building. There can be but little doubt that the devise, even if considered in the light of these circumstances

alone, would, by construction of law, extend to and include the outer limits of the general tract upon which the mill building stood; for, otherwise, we must either undertake to bound the land devised by the very walls of the mill itself or to fix its limits at some ascertained line intermediate the walls of the mill building and the exterior lines of the general tract; and this, in the absence of any fact or circumstance indicating the existence of such intermediate boundary. But, however this may be, there can be no hesitation, in view of the expression of *quantity* contained in the devise—" *a half league, more or less* "—in arriving at the conclusion that the tract intended to be devised was in extent approximating two thousand two hundred acres. It is evident that the testator himself estimated it as of about that quantity; and though the entire tract lying between Kilburn and Kellogg, and the lateral boundaries of the ranch, will fall short of that quantity by some eight hundred acres, it is to be remembered that the lateral lines of the ranch have been since located by the United States authorities, and that they may have excluded some lands which Dr. Bale supposed to be embraced within the land grant he had obtained. At all events, there is nothing appearing which would satisfy us that the testator was laboring under a delusion of such an extraordinary character as to mistake a tract of only one hundred and ninety-six acres for one of two thousand two hundred acres, or that he estimated the small tract lying west of the river and south of the Barnett line at more than ten times its actual area.

The Court below should, therefore, have construed the devise in the light of the circumstances thus appearing, as including the tract north of the Barnett line—so called— and east of the Napa River, to the eastern line of the ranch; and the necessary result of that construction must have been a verdict and judgment for the plaintiffs.

The judgment and order denying new trial must, there-fore, be affirmed; and it is so ordered.

CROCKETT, J., dissenting:

I dissent.