[S. F. No. 6383.  In Bank.—May 3, 1916.]

THOMAS J. O'HARA, as Administrator of the Estate of Mary Lynch, Deceased, Respondent, v. THOMAS J. WATTSON, as Executor of the Last Will of Kate Lynch, Deceased, Substituted in Place of Kate Lynch, Appellant.

SPECIFIC PERFORMANCE—ADEQUACY OF CONSIDERATION ESSENTIAL.—Under subdivision 1 of section 3391 of the Civil Code, the courts of this state may not enforce specific performance of a contract unless the consideration therefor is adequate.

ID.—DETERMINATION OF TRIAL COURT AS TO ADEQUACY.—The determination of what is to be deemed an adequate consideration in each case, under the circumstances surrounding the transaction at the time the contract was made, is a question upon which the decision of the trial court must, in large measure, control.

ID.—DISCRETION OF COURT — GROUNDS FOR REFUSING SPECIFIC PERFORMANCE.—On the question of decreeing specific performance of

executory contracts, the court of chancery must exercise, not an arbitrary, but a sound legal discretion. If the contract be free from objection, it is the duty of the court to decree specific performance. But if there are circumstances of unfairness, though not amounting to fraud or oppression, or if the inadequacy of consideration be so great as to render the bargain hard and unconscionable, on either ground the court may refuse its aid to enforce the contract, and leave the parties to contest their right in a court of law.

ID.—ADEQUACY OF CONSIDERATION, HOW DETERMINED.—Exact or even substantial equality in the value of the property at the time of the contract, as the court finds it to be, and the price fixed by the contract, is not the only circumstance to be considered in determining the adequacy of the consideration. The relations of the parties, and their love, affection, or regard for each other, as well as the object to be attained by the contract, may be given some effect.

ID.—PART PERFORMANCE OF ORAL CONTRACT—EFFECT OF—STATUTE OF FRAUDS.—Part performance by the vendee of an oral contract for the conveyance of land only raises an equitable estoppel against a plea of the statute of frauds. It does not relieve the contract from a defense based on inadequacy of consideration, injustice, or unfairness, or that it was obtained through oppression or by fraud.

ID.—FINDING OF INADEQUACY — LOVE AND AFFECTION OF VENDOR FOR VENDEE.—The supreme court cannot say that the trial court abused its discretion in holding the consideration for the oral contract in question to be inadequate, where it appeared that the property was worth eight thousand dollars, and was agreed to be sold for two thousand dollars, payable in monthly installments of less than the actual rental value of the property, that the vendor after the sale continued to pay taxes and insurance on the property, as before, and that the size of the monthly installments of the purchase price, show that the transaction was in effect a gift by the vendor to the vendee, notwithstanding the facts that the vendor had great love and affection for the vendee and was actuated by a desire that the vendee should be the owner of a home, and that a part of the consideration was that the vendee should move her residence from another part of the city where she resided to the premises in question.

ID.—REFUSAL OF SPECIFIC PERFORMANCE—CANCELLATION OF CONTRACT. In an action by the personal representatives of such vendor to recover the possession of the property from the vendee, in which the latter sought specific performance of the contract, the court had power to render a decree which, in addition to refusing specific performance, will do complete justice between the parties. Under the circumstances of this case, a decree annulling the contract was proper.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order refusing a new trial. J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

Walter Perry Johnson, for Appellant.

P. F. Dunne, H. H. McPike, and J. C. Murray, for Respondent.

SHAW, J.—In this case a rehearing, after the decision in department, was ordered mainly for the purpose of having the whole court consider and pass upon an important question frequently arising and upon which our decisions seem to be considered uncertain.

There is no difficulty in reaching the conclusion that, under subdivision 1 of section 3391 of the Civil Code, the courts of this state should not enforce specific performance of a contract unless the consideration therefor is adequate. So far the code declares our law and settles the question. The difficulties will be found in the application of the rule, and chiefly in the determination of what is to be deemed an adequate consideration in each case, under the circumstances surrounding the transaction at the time the contract was made. This is a question upon which the decision of the trial court must, in large measure, control. Much may be learned as to the meaning of the term "adequate consideration," as used in the code, by a perusal of the opinions of Chancellor Kent in *Seymour* v. *Delancey*, 6 Johns. Ch. 222, and of Chief Justice Savage in the same case on appeal, in 3 Cowen, at page 504. The code provision was framed with the intention of restating the rule declared in these opinions. Chief Justice Savage states the opposing doctrines thus: "The one class maintain, that the court will not lend its aid to enforce the performance of contracts, unless they are fair, just, and reasonable, and founded on adequate consideration. The other class maintain, that unless the inadequacy of price is such as shocks the conscience, and amounts in itself to decisive and conclusive evidence of fraud in the transaction, it is not of itself a sufficient ground for refusing a specific performance." (Page 517.)

His own conclusion is summed up as follows: "On the question of decreeing specific performance of executory contracts, the court of chancery must exercise its discretion; not an arbitrary, but a sound judicial discretion. If the contract be free from objection, it is the duty of the court to decree specific performance. But if there are circumstances of unfairness, though not amounting to fraud or oppression, or if the inadequacy of consideration be so great as to render the bargain hard and unconscionable; on either ground the court may refuse its aid to enforce the contract, and leave the parties to contest their right in a court of law." (Page 521.)

It will not do to say that the consideration must be held inadequate unless the value of the property at the time of the contract, as the court finds it to be, exactly or even substantially equals the price fixed by the contract. The court must ascertain the value from the evidence, which ordinarily consists mainly of the opinions of witnesses. There are few subjects on which witnesses are more likely to differ than that of the value of property, and few are more difficult of satisfactory determination. Exact accuracy is not to be expected. And after the value is determined, the question of adequacy is not necessarily settled thereby, for other circumstances may affect the question. Undoubtedly the relations of the parties, and their love, affection, or regard for each other, as well as the object to be attained by the contract, may be given some effect. Just how far such matters should incline a court, in its sound discretion, to conclude that a price less than the value as found, is nevertheless adequate to justify specific performance, we cannot state by any general formula of words. Nor need we do so in this case, for we cannot say that the court below erred in holding that a price of two thousand dollars, for property worth eight thousand dollars, is inadequate, under the circumstances. That the vendor had great love and affection for the vendee and was actuated by a desire that the vendee should be the owner of a home, and that a part of the consideration was that the vendee should move her residence from another part of the city where she then resided to the premises in question, are circumstances proper to be considered as tending in some slight degree to show that a price less than the fair value was not inequitable to the vendor and should not be considered inadequate by a court

of equity. But the facts that the vendor, after the sale, continued to pay the taxes and insurance on the property, as before, and to make very considerable repairs thereon, and that the price was to be paid in monthly installments of less than the actual monthly rental value of the premises, show that the transaction was, in effect, a gift by Mary Lynch to Kate Lynch, and was practically without any consideration other than love and affection.

We are satisfied with the opinion of Justice Henshaw, rendered in department, and adhere to the views there expressed.

The judgment and the order denying a new trial are affirmed.

Henshaw, J., Melvin, J., Sloss, J., and Lawlor, J., concurred.

The following is the opinion of Justice Henshaw rendered in Department Two, on July 23, 1915, adopted and approved in the foregoing opinion:

HENSHAW, J.—Plaintiff, administrator of the estate of Mary Lynch, deceased, brought his action in ejectment against Kate Lynch to recover possession of improved real estate in the city and county of San Francisco. Kate Lynch answered and likewise filed her cross-complaint, the two pleadings setting forth substantially the same matters. These matters are the following: Mary Lynch acquired the major part of the property in controversy by succession as heir of her husband, who owned it all, and, by purchase, of the other undivided portion of the property from his other heirs. Mary Lynch and Kate Lynch were cousins by marriage, and for many years a warm affection and close intimacy had existed between them. In June, 1898, Mary Lynch expressed to Kate Lynch her desire that Kate Lynch should acquire and own a residence of her own, and made an oral offer to put Kate Lynch in possession of the premises in question and to sell her the same for the sum of two thousand dollars, to be paid in monthly installments of $30 a month, "and that when said sum of two thousand dollars should be paid, it was agreed that Mary Lynch should execute and deliver to said Kate Lynch a good and sufficient

CLXXII Cal.—34

deed conveying to her the aforesaid real property." Kate Lynch so took possession and duly paid the sum of $30 a month until later when, by oral agreement, this monthly payment was reduced to the sum of $25 a month, which Kate Lynch duly and regularly paid, until at the time of the filing of the cross-complaint in May, 1908, she had paid the sum of $1,470. Mary Lynch, in her lifetime, never expressed her dissatisfaction with or repudiated the contract. After the death of Mary, Kate tendered and continued to tender to plaintiff as administrator of her estate the monthly sum of $25, which the administrator refused to receive and accept as payment under the contract. Relying on this contract, and with the consent of Mary Lynch, she made valuable improvements and expended therefor the sum of $450, which she would not have expended saving in reliance upon the contract. She has tendered to plaintiff the entire unpaid balance of the contract price, which plaintiff has refused to accept. She sought a decree of specific performance.

The court found the oral contract pleaded; found the entry into possession by Kate Lynch with the consent of Mary Lynch under the contract; found that the payments were made by Kate Lynch to Mary Lynch under the contract as pleaded; found that Kate Lynch did not expend $450 in improvements, but that she expended small sums for repairs which in the aggregate did not exceed one hundred dollars, but that, upon the other hand, Mary Lynch "frequently made and paid for valuable improvements and additions to said premises and paid all taxes levied or assessed upon said premises"; found that the value of the property at the time of this oral agreement and continuously thereafter was and is eight thousand dollars. The court also found that the rental value of the premises during the whole period of Kate Lynch's occupancy was $35 per month.

The court denied specific performance, and as by its judgment it has decreed a restitution of the premises to the administrator, it necessarily set aside the oral contract, at least so far as the right of possession was concerned. From this decree defendant has appealed.

Upon the appeal it is argued that, admitting the disparity between the actual value of the property and the contract price, mere inadequacy of price is not alone sufficient in equity to justify the avoidance of such a contract as this,

and that in the specific case at bar other considerations enter which, added to the price, remove from the contract whatever sting may be thought to attach to it because of this inadequacy. Those considerations are the love and affection which Mary Lynch bore to Kate, and her expressed desire that Kate should have a home of her own, the entry by Kate into possession under these circumstances, which entry she would not have made saving for the belief that she was taking possession under a good and enforceable contract; the long acquiescence of Mary Lynch in the contract, and her receipt of moneys thereunder, and the fact that the repudiation was not made by her, but by her personal representative after her death. Lying across the threshold of these considerations appellant relies upon the familiar and not to be disputed doctrine that part performance of a parol contract for the sale of land will be held to remove the bar to its enforcement of the statute of frauds.

It is to be noted that while the court found the existence of the contract as pleaded, there are no findings touching the relations of friendship and love asserted to exist between Mary and Kate Lynch. But this is of slight consequence, since it is at least fairly inferable (fraud or deceit not being charged) that some such consideration moved the vendor to the making of the contract which the court found to exist. And therefore for the purposes of this consideration appellant's contention that such relations did exist will be treated as well founded.

The cross-complaint will be scanned in vain to discover therein any allegation of the adequacy of the consideration moving from defendant to plaintiff's intestate or of the justness and reasonableness of the contract. Yet from the early case of *Bruck* v. *Tucker*, 42 Cal. 346, consistently down it has uniformly been held that such averments are essential to a good pleading in equity for specific performance. Only a few of these cases need be cited. (Civ. Code, sec. 3391; *Stiles* v. *Cain*, 134 Cal. 170, [66 Pac. 231]; *White* v. *Sage*, 149 Cal. 613, 616, [87 Pac. 193]; *Kaiser* v. *Barron*, 153 Cal. 788, [96 Pac. 806]; *Joyce* v. *Tomasini*, 168 Cal. 234, 236, [142 Pac. 67]; *Young* v. *Matthew Turner Co.*, 168 Cal. 671, [143 Pac. 1029].) But without pausing to pass upon the insufficiency of the cross-complaint in this respect, but merely calling attention to it, to the end that it may not be thought to

be approved by this court, we will pass on to the matter demanding elucidation and settlement.

While it is of course true that part performance of contracts for the conveyance of land in certain instances is held sufficient to lift the bar of the statute of frauds, it is equally true that not every act of part performance is sufficient. We need not·enter into this consideration, for again it will be assumed for the purposes of this case that the part performance here is sufficient. But precisely what does this mean? It means only that equitable considerations impel the chancellor to say that he will treat the contract as though it were duly written and signed by the parties. It raises an equitable estoppel against a plea of the statute of frauds. In no other respect, however, does it vary the terms of the contract. It does not relieve it from any other infirmity demanding its condemnation. If the consideration be inadequate, it does not make that consideration adequate. If it be unjust or unfair to the vendor, it does not remove that injustice or unfairness. If it shall have been procured through oppression or by fraud, it does not relieve it from these condemning vices. (Pomeroy's Equity Jurisprudence, secs. 1034, 1405; *Arnold* v. *Trice*, 39 Ga. 511; *Weed* v. *Terry*, 2 Doug. (Mich.) 344, [45 Am. Dec. 257]; *Walker* v. *Bohannan*, 243 Mo. 119, [147 S. W. 1024].)

It is quite manifest that the court denied cross-complainant the relief of specific performance under the conviction that the contract of conveyance was without adequate consideration moving to the vendor. (Civ. Code, sec. 3391, subd. 1.) Appellant's position herein is that mere inadequacy of consideration is never a ground for a refusal to decree specific performance, unless the inadequacy be of such character (quoting the language of Lord Eldon in *Coles* v. *Trecothick*, 9 Ves. Jr. 246, [32 Eng. Reprint, 592]), "as shocks the conscience and amounts in itself to conclusive and decisive evidence of fraud in the transaction." Further, appellant argues that this mere inadequacy of price may be supplemented and made good by certain equitable phases which amount to an additional consideration to the purchase money. Or, in other words, that in addition to the money, the appellant paid *pretium affectionis*. Appellant further contends that this view finds not only general support in the quoted cases, but finds direct support in at least one, and that a

very recent case decided by this court. (*Dore* v. *Southern Pacific Co.*, 163 Cal. 182, [124 Pac. 817].) To this immediate consideration we now address ourselves.

There were many, and there are still some, debatable and disputable propositions touching the granting or withholding of equitable relief. Some that were debatable and over which there was a conflict of authority in equity, have been removed from the domain of argument and definitively settled by the provisions of our code. One of those much debated propositions was whether equity, where specific performance was sought, should deny relief upon the sole ground of the inadequacy of price, or other consideration. In the famous and leading case of *Seymour* v. *Delancey*, 6 Johns. Ch. (N. Y.) 222, Chancellor Kent applied his great wisdom and learning to the question, and, under an elaborate review of the authorities, held that equity would and should withhold the relief of specific performance for mere inadequacy of price, unconnected with any other consideration; that is to say, an inadequacy of price, untainted by fraud, oppression or other advantage taken. The learned chancellor's holding in this respect was overruled upon appeal to the court for the trial of impeachments and the correction of errors, though it is not amiss to note that no justice nor chancellor dissented from the view of Chancellor Kent, and that his decision was overruled by a vote of the senators. The learned chief justice of that court wrote the opinion sustaining the views of Chancellor Kent, and recognizing that it was a question "upon which very great men have differed and have administered the equity of the court upon diametrically opposite principles," he reached and expressed the conclusion that not only was the weight of authority very heavily against the doctrine condemning mere inadequacy of price as a ground for withholding relief, but he arrayed by name against Lord Eldon, as the protagonist of what he called the later doctrine, many men very learned in equity, and amongst them, and not the least of them, Chancellor Kent himself. Moreover, Chief Justice Savage is at pains to point out that the doctrine announced by Chancellor Kent has been the prevailing practice in courts of equity. It is said by Professor Pomeroy (6 Pomeroy's Equity Jurisprudence, sec. 790), that "the earlier cases were inclined to make mere inadequacy a sufficient hardship to defeat specific performance, but this tendency

was checked by Lord Eldon.'' *Coles* v. *Trecothick,* 9 Ves. Jr. 246, [32 Eng. Reprint, 592], and *Mortlock* v. *Buller,* 10 Ves, Jr. 292, [32 Eng. Reprint, 857], are Lord Eldon's cases so declaring. They undoubtedly so declare, but in their facts they were both addressed to contracts growing out of a public auction of the property sold, and to which title was sought to be obtained by this equitable action. Upon the other hand, it is pertinent to point out that while Lord Eldon's cases were decided early in the last century (1804–1805), later in 1859 the same matter came before the English court in *Falcke* v. *Gray,* 4 Drew, 651, [62 Eng. Reprint, 250], where the precise contention was urged upon the court that mere inadequacy of price did not forbid specific performance. The vice-chancellor, speaking for the court, reviewed the cases and declared that Lord Eldon's opposing view was based upon the ground that the sale was by auction, and summed up the conclusion in the following language: "Now, these last two mentioned cases appear to me to be decisive on the point, and I am of the opinion that in the present case I ought to refuse specific performance on the mere ground of inadequacy of price, even if there were none other." True it is that the learned Professor Pomeroy declares the rule to be the opposite, and further insists that "the doctrine is now settled that *mere* inadequacy, that is inequality in value between the subject matter and the price is not a ground for refusing the remedy of specific performance." (2 Pomeroy's Equity Jurisprudence, sec. 926.) We have no intention of entering into a discussion of this matter, and no desire to point out the trend of later decisions, since Professor Pomeroy's most able text was written. But we have deemed it advisable to show that however well settled the general rule may be conceived to be, there are courts—not a few of high dignity and authority—whose rulings are in flat contrariety to that rule, and this has been said only as preliminary to the declaration that the state of California did adopt the rule of Chancellor Kent, and does not stand alone in so doing. That it did adopt the rule of Chancellor Kent is establishe beyond controversy by the language of the code commissioners who formulated our code section governing the matter. When they cast section 3391 of the Civil Code into its present form, they said, referring to it: "This rule was expressly adjudged upon full consideration by Chancellor Kent in *Seymour* v. *Delancey,* 6

Johns. Ch. (N. Y.) 222, and sustained by Savage, C. J., and nine senators on appeal, on a point to which such decision was essential. While it was admitted by the senators, who voted for reversal." (Haymond and Burch on Annotated Civil Code of California, 1874.)

It is therefore put beyond the reach of successful argument that the laws of the state of California declare to its courts of equity that they shall deny the equitable relief of specific performance when they find an inadequacy of price standing alone. Such has been the universal rule of decision in this state, and herein let it suffice, amongst the many, merely to refer to *Morrill* v. *Everson,* 77 Cal. 114, [19 Pac. 190] ; *Newman* v. *Freitas,* 129 Cal. 283, [50 L. R. A. 548, 61 Pac. 907] ; *White* v. *Sage,* 149 Cal. 613, [87 Pac. 193], and *Wilson* v. *White,* 161 Cal. 453, [119 Pac. 895]. And it may with propriety be added in explanation of Professor Pomeroy's text, that while in section 790 of his Equity Jurisprudence he states the rule as above quoted, in the footnote to that section it is recognized that a different rule obtains in California, and *Prince* v. *Lamb,* 128 Cal. 120, [60 Pac. 689], is cited in illustration of that rule, with a declaration that the California rule "rests on the provisions of the Civil Code, section 3391."

It has been said that appellant, notwithstanding our statutory rule and the observance paid to it in a long and uniform line of decisions, holds that the language of this court in *Dore* v. *Southern Pacific Co.,* 163 Cal. 182, [124 Pac. 817], supports his view. It is just that that language should be quoted at length. It is as follows :

"It is a well-established rule of equity that in an action to enforce specific performance of an executory agreement for the sale of land, the plaintiff must allege and prove that the consideration received by the other party was adequate, and that the agreement is, as to him, just and reasonable; in other words, that it is not, as to the other party, an unconscionable, inequitable or hard bargain, that the value of the land and the price to be paid are in reasonable approximation to equality. (Civ. Code, sec. 3391; *White* v. *Sage,* 149 Cal. 613, 615, [87 Pac. 193] ; *Kaiser* v. *Barron,* 153 Cal. 788, 790, [96 Pac. 806] ; *Stiles* v. *Cain,* 134 Cal. 170, 171, [66 Pac. 231] ; *Bruck* v. *Tucker,* 42 Cal. 346, 353.) There are many other cases. If the other party, with knowledge of such inequality as there

may be, nevertheless desired to and freely did enter into the contract without any unfair advantage being taken of him, it will not be deemed inequitable as to him. The demands of this rule will be considered as sufficiently met by these circumstances.''

It would be indeed singular if this court in Bank should deliberately contemplate the setting aside of the code provision and the overruling of our cases following it, and in doing so should have paid such scant consideration to that rule and to those cases. It would be the more remarkable if the learned author of the opinion in the Dore case had himself designed to do this thing when in his later opinion in *Joyce* v. *Tomasini,* 168 Cal. 234, [142 Pac. 67], he reannounces our well-established and familiar rule, and bases it upon the express language of the code in the following sentence: ''The Civil Code, following the settled doctrine of equity jurisprudence, declares that specific performance of an executory contract cannot be enforced against a party if he has not received an adequate consideration therefor, or if it is not, as to him, just and reasonable. (Sec. 3391.)'' The truth of the matter is that the court in the Dore case was not called upon to consider the proposition here advanced and was not considering it. It was considering the degree or amount of disparity between value and contract price which would establish inadequacy, and it was further considering the nature of the evidence in the case before it establishing value as distinguished from price. It is in this respect not unlike another case to which attention will hereafter be directed. So understood, the declaration amounts to this, that if there be a reasonable approximation to equality between the actual value as found by the court and the price fixed by the contract, the vendor will not be heard to complain of such inconsequential disparity as may be found to exist, but will be bound by the fact that he desired to and did freely enter into the contract without unfair advantage taken of him. This language was, of course, most pertinent to the consideration there before the court, because the question will often arise as to what disparity between value and price amounts to the inadequacy of the statute. And in this connection we may refer, as it was above suggested we would, to *Wilson* v. *White,* 161 Cal. 453, [119 Pac. 895]. In that case our rule of decision is redeclared, and it is said that while

Professor Pomeroy lays down the contrary rule, "it is clear of course that our statute has made inadequacy of consideration a separate ground for refusing specific performance." There the property was found to be worth fifteen thousand dollars while the contract price was fourteen thousand dollars, and the question before this court was whether the trial court's determination that this was an inadequate price was supported. The court expressed its doubt as to whether this disparity amounted to the inadequacy of our statute. But in the light of other considerations which showed the dependence of the vendor upon the vendee for his means of information as to the value of his property, the duty of the vendee under the circumstances to give such information, and his withholding of it, there were added grounds which, taken with the difference between the value and the contract price, established the latter's inadequacy. But from any point of view the disparity in the present case is so gross as to require nothing further to support the declaration that it measures up in all respects to the inadequacy contemplated by our code section, an inadequacy which cannot be made good by considerations of love and affection.

It requires no discussion to support the statement that the contract in this case was executory and not executed. By the very terms of it, as pleaded by the appellant, her payments were to continue at the rate of $25 per month, and it was no more within the contemplation of the contract that she could pay the money otherwise than in accordance with its terms, than that the plaintiff could put her in default by demanding immediate payment of the whole of the remainder of the purchase price.

Appellant finally argues that even if the contract be unenforceable in equity, yet it is a valid contract in law, and that so long as she conforms to the terms of the contract, her possession cannot be taken from her as is done by this decree. Herein reliance is placed upon *Manning* v. *Franklin,* 81 Cal. 205, [22 Pac. 550], and *Miller* v. *Waddingham,* 91 Cal. 377, [13 L. R. A. 680, 27 Pac. 750]. It is quite true that when parties have submitted themselves and their contract to a court of equity, that court may simply withhold equitable relief, leaving the parties to such remedies as the law affords them. But this is not the limit of the power of equity when litigants have submitted themselves to its jurisdiction. It is

fundamental that it will do complete justice between the parties. What equity may do is well declared by Lord Eldon in *Willan* v. *Willan*, 16 Ves. Jr. 83, where he says that "there were many cases in which the court would not disturb an agreement that has been executed, though it would have refused to carry that agreement into execution; and there were also many cases upon the other point, where, refusing to execute an agreement, it will leave the party to make the most of it at law, where the jury may determine upon all the circumstances what shall or shall not be given as damages; and there is a third class of cases in which the court, refusing to carry the agreement into execution, would not stand neuter, but would order it to be delivered up." In this case the decree of the court in effect annuls the contract, and as under its findings it appears that defendant had enjoyed possession of the property for many years, paying therefor a sum less than its rental value, and that this difference between the monthly payments and the rental value far exceeded in amount all that she had expended in the repairs of the property, the decree annulling the contract was not inequitable, and is sustained.

The judgment appealed from is therefore affirmed.

Lorigan, J., and Melvin, J., concurred.