[S. F. No. 1446.   Department One.—July 20, 1900.]

SAMUEL NEWMAN, Appellant, v. ADA M. FREITAS et al., Respondents.

SPECIFIC PERFORMANCE—INADEQUACY OF CONSIDERATION.—Under section 3391 of the Code of Civil Procedure, inadequacy of consideration is made a distinct ground for refusing a specific performance of a contract, independently of the question whether it amounts to evidence of fraud.

ID.—CONTINGENT FEE OF ATTORNEY IN DIVORCE SUIT—SHARE OF COMMUNITY PROPERTY—INADEQUATE CONSIDERATION—REASONABLE COMPENSATION.—A contract for a contingent fee of an attorney in a divorce suit, giving one-third interest in the share of community property recovered by the wife as plaintiff, cannot be specifically enforced, where it appears that the plaintiff did not receive adequate consideration for her promise, and that the attorney received, by order of the court in the divorce suit, a reasonable compensation for all the services performed by him.

ID.—PRESUMPTION FROM ALLOWANCE BY ORDER OF COURT—KNOWLEDGE OF CONTRACT—INVALIDITY.—It must be presumed from the allowance made for the services of the attorney for the plaintiff in the divorce suit, by order of the court, with knowledge of the written contract for a contingent fee, that the court deemed the contract illegal and void, and made the allowance as if no contract had existed. Otherwise, the allowance could not be justified.

ID.—JUSTICE AND REASONABLENESS OF CONTRACT—RULES OF EQUITY.—Under section 3391 of the Civil Code, specific performance cannot be enforced against a party to a contract "if it is not as to him just and reasonable." Under the settled rules of equity, specific performance cannot be decreed unless it affirmatively appears that the contract is fair, just, and equal in all of its parts, and reasonable and equal in its operation; and if it is in any respect unfair or oppressive, the plaintiff will be left to his remedy at law.

Id.—DIVORCE—CONTRACT FOR CONTINGENT FEE AGAINST PUBLIC POLICY.—
A contract between an attorney and the plaintiff in a divorce
suit for a contingent fee is against the policy of the law, and
contrary to good morals. The law does not favor divorce; and
any collateral bargaining promotive of it is unlawful and void,
whether made by the parties with each other, or by one of the
parties with an attorney whose benefit depends upon procuring
the divorce.

Id.—REASON OF RULE AS TO CONTINGENT FEES—CESSATION OF RULE IN
DIVORCE CASES—POWER OF COURT.—The reason of the rule allowing
attorneys to contract for contingent fees in civil cases, for the
protection of persons unable to pay a certain fee for a meri-
torious cause of action or defense, does not apply to contracts
with the wife in a divorce suit, in which the court may require
the husband to pay the wife's expense for prosecuting or de-
fending the action. The reason or necessity for the rule ceasing
in such cases, the rule itself also ceases therein.

APPEAL from a judgment of the Superior Court of the City
and County of San Francisco.    James M. Troutt, Judge.

The facts are stated in the opinion of the court.

Robert Y. Hayne, for Appellant.

Rodgers, Paterson & Slack, and Henry K. Mitchell, for Ada
M. Freitas, Respondent.

Shortridge, Beatty & Brittain, and Delmas & Shortridge, for
Manuel T. Freitas, Respondent.

VAN DYKE, J.—The appellant, as plaintiff, sues as assignee
of a contract for contingent fees in a divorce suit. The con-
tract in question is as follows:

"I hereby retain and employ J. H. Long, Esq., as my attorney,
to act for me in all matters arising or growing out of any di-
vorce proceedings or separation with my husband, M. T. Freitas,
or in regard to the settlement of my community property rights,
or to act for me in regard to any settlement, compromise, or
other disposition of any agreement or settlement which may
take place between myself and my said husband.

"I am about to commence proceedings for absolute divorce
or separation, and, whereas, I desire to secure my proper pro-
portion of the community property, I hereby empower and au-
thorize the said J. H. Long to do whatever he may see fit in

the premises in connection with said divorce or separation and obtaining of my portion of the community property, and I hereby agree to pay to the said J. H. Long one-third (1-3) of all amounts recovered or received by me by reason of said or any action commenced in my behalf, or by reason of any settlement, compromise, compact, or agreement, or in fine, by any reason whatsoever.

"Provided, first, however, that no compromise or agreement can take place or be had in the premises without first obtaining the written consent of said parties hereto, and I further agree in no event to substitute any attorney in the place of said Long in said matters.

"In witness whereof, the said parties hereto have hereunto set their hands and seals this 24th day of October, 1893.

"ADA M. FREITAS.

"J. H. LONG."

The court below found that the said James H. Long, one of the parties to the contract, at the time of making the same, was an attorney at law, admitted to practice only in the superior court in and for the city and county of San Francisco, and never had been admitted to practice in the supreme court of the state; that under said contract said Long commenced an action in the superior court in and for said city and county of San Francisco, in the name of said Ada M. Freitas against her husband, Manuel T. Freitas, for a divorce and a division of the common property; that he conducted the proceedings in said action during the period of about fifteen months, mostly in taking testimony before the commissioner to whom the cause had been referred for that purpose, and the taking of such testimony consisted of twenty-four hearings before said commissioner. The testimony so taken consisted of twelve hundred and seventy-nine typewritten pages of ordinary size, and at the end of said period, about April, 1895, the plaintiff in said action, Ada M. Freitas, became dissatisfied with her attorney and with the consent of said attorney employed Messrs. Delmas & Shortridge, who were thenceforth associated with said Long in said cause; that thereafter the said Long, in conjunction with said Shortridge of said firm, drafted an amended complaint in said cause; and

thereafter participated in two hearings before said commissioner in the taking of testimony, but that he did not participate in any further hearing before said commissioner; that during the month of June, 1896, the cause was argued in the superior court by said Shortridge on the testimony taken before said commissioner, and said Long did not participate in said argument, and did not know that said cause was set down for argument, or that any argument was made therein, until everything was concluded and the compromise made, but that he never refused to render any services requested of him in the cause; that some eighteen months after Delmas & Shortridge were associated in the case, and when the decree of divorce had been granted, a compromise as to the property rights was arranged between the plaintiff and defendant in said action; that by the terms of said compromise the defendant in said action conveyed and transferred to the plaintiff therein two pieces of real estate situated in the city and county of San Francisco, alleged to be of the value of ten thousand dollars, household furniture, including a piano, of the value of fifteen hundred dollars and upward, and the sum of sixteen hundred dollars in cash; that she was decreed fifty dollars per month as permanent alimony; and that during the pendency of the divorce case, by order of the court, said Long received as counsel fees the sum of eleven hundred dollars from the defendant in said action, but it is found that this order was made with knowledge of the existence of the written contract in question for a contingent fee. It is also found that said Long, although not admitted to the supreme court, was at all times a reputable attorney and competent to prosecute or manage any action before the superior court, and that he did not negligently or otherwise abandon the case of the defendant, Ada M. Freitas, in the said superior court; that said Long, on or about the 20th of July, 1894, executed and delivered to the plaintiff an assignment and transfer of said contract between him and said Ada M. Freitas. Upon these facts the court found as a conclusion of law that the plaintiff was not entitled to recover in said action, and ordered judgment accordingly in favor of the defendants. An appeal is taken from the judgment so entered and comes up on the judgment-roll.

The contention on behalf of the appellant is that upon the facts found by the court the judgment should have gone for the plaintiff. The judgment, however, is sustainable upon several grounds and for various reasons.

1. This is not an action at law to recover upon the contract, or for damages for a breach of the same, but is a case in equity for a specific performance of the contract in question. "Specific performance cannot be enforced against a party to a contract in any of the following cases: 1. If he has not received an adequate consideration for the contract; 2. If it is not as to him just and reasonable." (Civ. Code, sec. 3391.) In *Morrill v. Everson,* 77 Cal. 114, it is held that, while there was a consideration sufficient to support the contract at law, yet there was no adequate consideration, and that consequently a court of equity would not specifically enforce it; that, although before the code the preponderance of authority was that the mere inadequacy of consideration, not amounting to evidence of fraud, was not ground for refusing specific performance, yet that under the provisions of the code inadequacy of consideration is made a distinct ground for refusing specific performance. Mrs. Freitas did not receive an adequate consideration for her promise, and Long was fully compensated for the services he performed. It appeared there were twenty-four hearings which he attended before the commissioner in taking testimony, and that all the testimony taken was twelve hundred and seventy-nine typewritten pages, or about fifty pages at a session, which would not be a very hard day's work, to say the least. But at the rate the services were performed the compensation received amounted to nearly fifty dollars per day. It is found that the court, in making the allowance to Mrs. Freitas as compensation for Long as her attorney, knew of the existence of the contract. The inference, therefore, is that the court held the contract to be illegal and void. Otherwise the allowance was made squarely in the teeth of several decisions by this court. (*Sharon v. Sharon,* 75 Cal. 1, 42; *Reynolds v. Reynolds,* 67 Cal. 176; *White v. White,* 86 Cal. 212.) In the Sharon case there was a contract for a contingent fee, as in this case, and the court, without deciding whether such an agreement was valid and enforceable, says: "Conceding that the agreement

cannot be enforced, in case, as the final result of litigation, the plaintiff shall realize a share or portion of the community property, the agreement was a fact which should have influenced the action of the court below. If it had appeared at the hearing of the motion that Mr. Tyler, actuated solely by a desire to vindicate justice and the good name of the plaintiff, had promised to prosecute the action without compensation, that he was fully competent and had prosecuted it, the circumstances would show that she had no necessity for money to pay counsel. The question is not whether, as between the parties, counsel ought to be paid, but whether the wife has need of money to prosecute her action. . . . . If counsel had abandoned her cause, it might, perhaps, have been necessary for the court to provide the plaintiff means for securing legal assistance." It is fair to presume, therefore, that as the court below understood the matter, the allowance made to Long as the attorney of Mrs. Freitas was made as if no contract had existed. At any rate, it was a reasonable compensation for the services he had performed. In *Cooper v. Pena*, 21 Cal. 403, it is said: "Before the court will act, it must be satisfied that the contract is reasonable and equal in its operation. The rule, as stated by Chancellor Kent, is that unless the court be satisfied that the contract is fair and just and equal in all its parts, and founded on an adequate consideration, it will not by the interposition of its extraordinary power order it to be executed." In *Agard v. Valencia*, 39 Cal. 292, it is said: "Another well-established rule in courts of equity is that in a suit for a specific performance it must be affirmatively shown that the contract is fair and just, and that it would not be inequitable to enforce it. The court will not lend its aid to enforce a contract which is in any respect unfair or savors of oppression, but in such cases will leave the party to his remedy at law." (See, also, *Bruck v. Tucker*, 42 Cal. 346; *Sturgis v. Galindo*, 59 Cal. 28[1]; *Kelly v. Central Pac. R. R. Co.*, 74 Cal. 557[2]; *Mathews v. Davis*, 102 Cal. 204.)

The plaintiff in this action seeks to recover not only one-third of the real and personal property and money payment,

[1] 43 Am. Rep. 239.
[2] 5 Am. St. Rep. 470.

but also one-third of the allowance for permanent support ordered to be paid by the husband to the wife in the divorce suit, and asks that this court decree accordingly, and that said Manuel T. Freitas be ordered to pay over to the plaintiff the one-third of the fifty dollars per month, as the same becomes due. Aside from the objection that a specific performance should not be decreed in this case as to the permanent alimony, or rather support, and the personal property in question, Long having received a fair compensation for all the services he rendered to the plaintiff in the divorce suit, his assignee of the contract standing in no better position than he would, it would not only be inequitable, but unreasonable and unjust, to decree a specific performance in his favor.

2. But there is an objection to the enforcement of the contract more radical than the one just considered. The contract is, in its nature, against the policy of the law and contrary to good morals. The law does not favor divorce, and permits it only for approved causes and on sentence from duly established public authority. Therefore, any agreement for divorce, or any collateral bargaining promotive of it, is considered unlawful and void. (2 Bishop on Marriage, Divorce, and Separation, sec. 696; Greenwood on Public Policy, 490.) Under our code either husband or wife may enter into any agreement or transaction with the other, or with any other person, respecting property, which either might if unmarried. (Civ. Code, sec. 158.) Notwithstanding this freedom to enter into any contract between themselves or with other persons, it has been held in this state repeatedly that an agreement between husband and wife founded upon consideration to withdraw or abandon a defense to a suit for divorce, or do anything to facilitate procuring the same, is illegal and void. (*Beard v. Beard*, 65 Cal. 354; *Senter v. Senter*, 70 Cal. 619; *Loveren v. Loveren*, 106 Cal. 509.) In the latter case the following from *Phillips v. Thorp*, 10 Or. 494, is quoted with approval: "The authorities are uniform in holding that any contract between the parties having for its object the dissolution of the marriage contract, or facilitating that result, such as an agreement by the defendant in a pending action for divorce to withdraw his or her opposition, to make no defense, is void as *contra bonos*

*mores.*" The courts of other states have expressed themselves similarly in reference to such contracts. In *Hamilton v. Hamilton*, 89 Ill. 349, it is said: "The majority of the court, however, are of opinion that the contract set out in the declaration is in its essence and character against public policy and it must be held invalid upon that ground. While divorces are authorized by law, they ought not to be encouraged. In this contract there is no express agreement that the husband would not resist the application for a divorce, or that he would consent to a divorce, still it is thought that to permit such a contract as this to be enforced in the courts would open the door for the attainment of divorces by collusion, and upon this ground the decision of the court in sustaining the demurrer to the declaration ought to be sustained."

In *Muckenburg v. Holler*, 29 Ind. 139,[3] the court say: "The special contract for the payment of two hundred dollars was contrary to the policy of the law. It was so framed as to have effect only on condition that a divorce should be granted. Its direct tendency was to influence the present plaintiff in procuring a divorce or in overcoming resistance to an effort by his wife directed to that end. The marriage relation is not thus to be tampered with, and the courts, by contracts of the parties, converted into mere registers of their agreement for separation from the bonds of matrimony. The law favors marriage, and cannot, therefore, sanction contracts intended to promote its dissolution by lending itself to their enforcement. We know of no case in the books in which such an appeal to any court to compel the fulfillment of such a contract or to award damages for its breach has been successfully made."

In *Schmieding v. Doellner*, 10 Mo. App. 373, it is said: "That any agreement entered into between husband and wife pending a suit for divorce, or in contemplation of such a suit, whose force and effect are in any way made dependent upon the result of the suit, will be held void because of the motive or inducement which it offers for either a passive consent or active aid in promoting the consummation of a divorce. There may be no direct evidence of collusion for that specific purpose. It is sufficient to vitiate the agreement if it be so framed that in

[3] 92 Am. Dec. 345.

order to an enjoyment of its benefits by one party or the other a decree must supervene. The law will sustain no act whose tendency, whether such be its purpose or not, is toward promoting dissolution of marriage."

The principle recognized in these and other like authorities applies with equal force to a contract between the wife and an attorney, where, as in the case of this contract, the enjoyment of its benefits by one party, to wit, the attorney, depends upon procuring the divorce. Several cases have been before this court in which there were contracts similar to the one under consideration; for instance, *Reynolds v. Reynolds, supra, Sharon v. Sharon, supra,* and *White v. White, supra.* In none, however, was it necessary to determine the question whether or not such a contract between a married woman and an attorney in contemplation of divorce proceedings by which the attorney was to receive a share of what was recovered, was lawful. In at least one of these cases, however, it was intimated that such contract was considered invalid.

But in some of the other states the question has been directly decided adversely to such contract. *Jordan v. Westerman,* 62 Mich. 170,[4] was such a case. There the plaintiff, on the day she commenced the proceeding against her husband for divorce, entered into a written contract with defendants, who were attorneys, by which she retained them to prosecute the suit, and to pay the defendants, as compensation for their services and costs which they were to advance, whatever sum the husband should be compelled to pay by the court or otherwise. The husband by himself and counsel endeavored to effect a settlement and reconciliation, but the defendants as plaintiff's counsel resisted such efforts until the husband paid over to them as costs, alimony, and expenses the sum of four thousand five hundred dollars. The divorce was obtained and the defendants paid to the plaintiff half of the sum received, and retained the balance under the terms of their contract. The plaintiff brought the suit in question to recover the balance of the money paid over by the husband to defendants. The supreme court of Michigan, in passing upon the contract in question says: "Such contracts are against public policy for an-

---

[4] 4 Am. St. Rep. 836.

other reason. Public policy is interested in maintaining the family relation. The interests of society require that those relations shall not be lightly severed, and that families shall not be broken up for inadequate causes or from unworthy motives; and where differences have arisen which threaten disruption, public welfare and the good of society demand a reconciliation, if practicable or possible. Contracts like the one in question tend directly to prevent such reconciliation, and if legal and valid, tend directly to bring around alienation of husband and wife, by offering a strong inducement, amounting to a premium, to induce and advise the dissolution of the marriage ties as a method of obtaining relief from real or fancied grievances, which otherwise would pass unnoticed."

Contracts for contingent fees paid attorneys were not tolerated at all at common law, but in this and perhaps most of the states such contracts are allowed, if not favored. This is on the ground that otherwise a party, without the means to employ an attorney and pay his fee certain, and having a meritorious cause of action or defense, would find himself powerless to protect his rights. In divorce cases, however, the law has taken care that the wife shall not be without assistance in proper cases either to prosecute or defend such actions. The court in its discretion may require the husband to pay as alimony any money necessary to enable the wife not only to support herself, but also to prosecute or defend the action, and is given ample power to enforce such order. The reason or necessity therefor does not exist in such cases as in the others for allowing contingent attorneys' fees, and where the reason ceases the rule or law also ceases.

By the contract in question the attorney was to have a portion of or an interest in the community property to be recovered, and a division of the community property could take place only upon a dissolution of the marriage. (Civ. Code, sec. 146.) This prospective share in the community property, being the greater interest, was the controlling consideration on the part of Long. Hence, he was directly and greatly interested, not only in preventing any reconciliation, but in bringing about a divorce. As he assigned this contract before the same had been performed on his part, the plaintiff also became interested

with him. By a process of assignments this interest might be extended as the exigencies of the case might require, so as to include many persons of means and influence who would lend their assistance in the accomplishment of the same purpose; in other words, create a brokerage and form a syndicate in the business of contingent divorce contracts. We think the policy of the law is against all contracts of the kind; that they should be held illegal and void, and that the courts should refuse to aid their enforcement.

Judgment affirmed.

Harrison, J., and Garoutte, J., concurred.