[L. A. No. 6256. In Bank.—October 14, 1921.]

# S. J. PARSONS, Respondent, v. ANNIE DELL SEGNO, Appellant.

[1] ACCOUNT STATED—WHAT CONSTITUTES.—An account stated is an agreement between both parties that all the items of the account are true, which agreement need not be express but may be implied from circumstances.

[2] ID.—SUFFICIENCY OF EVIDENCE.—Where the creditor rendered his account to the debtor on a certain date, after which the latter paid several amounts for which the former gave her credit and ten months afterward mailed her another account, the first item of which was the balance shown by the previous statement, to which latter statement of account the debtor made no objection and after the amount claimed to be due was demanded stated she would settle the account and offered to give her note for it, there was an account stated.

[3] ID.—SURCHARGING AND FALSIFYING ACCOUNT—FRAUD OR MISTAKE—PLEADING.—In order to surcharge and falsify an account stated on the ground of fraud or mistake, the facts constituting the fraud or mistake must be pleaded, a reopening of the account asked for, and the proof must be confined to the allegations of fraud or mistake.

[4] ID.—VOID CONTRACT—REPUDIATION OF—CLAIM OF FRAUD.—In an action upon an account stated, where the only assignment of fraud was the alleged inclusion in the account of a demand based upon a void contract for a contingent fee in a divorce suit, but there was evidence from which the court could have found the void contract was repudiated by the parties and a new one entered into in lieu thereof, the claim of fraud is not sustained.

[5] APPEAL— ASSIGNMENTS OF ERROR — INSUFFICIENCY OF.—Assignments of error to findings "on the ground that the court would not allow any evidence on those issues," with a mere reference to the transcript on appeal for certain rulings of the court on the admission and rejection of testimony, but without attempt to print in the briefs those portions of the record, or to show wherein the errors, if any, lie, do not conform to the requirements of section 953c of the Code of Civil Procedure.

1. What constitutes an account stated, notes, 62 Am. Dec. 85; 136 Am. St. Rep. 37; 27 L. R. A. 811.

4. Illegal character of original transaction as defense to an action on account stated, note, 45 L. R. A. (N. S.) 539.

APPEAL from a judgment of the Superior Court of Los Angeles County. Dana R. Weller, Judge. Affirmed.

The facts are stated in the opinion of the court.

Alfred E. Putnam and Will D. Gould for Appellant.

S. J. Parsons, *in pro. per.,* for Respondent.

LAWLOR, J.—This is an appeal by the defendant from a judgment in favor of the plaintiff for $3,509.11 and costs, being the full amount demanded in an action in three counts to recover the sum of $250, with interest, on each of two promissory notes signed by the defendant, as maker, and the sum of $2,160.61, with interest, on an alleged account stated.

In June, 1911, appellant retained respondent as her attorney for the purpose of bringing an action for divorce against her husband, A. Victor Segno, effecting a property settlement with him, and looking after other legal business for her. The divorce was granted and the property divided. In the course of handling her affairs, aside from the divorce action and the property settlement, respondent appeared as her attorney in the trial of certain other cases, organized a corporation for her, and otherwise assisted in the conduct of her affairs. At the time appellant retained respondent, they entered into an agreement in writing whereby appellant agreed to give respondent seven per cent of all the property she received from her husband under the settlement. According to the evidence, the value of this property was never definitely ascertained. It is not disputed that this contract was void as against public policy, being a contract for a contingent fee in a divorce action (*Newman* v. *Freitas,* 129 Cal. 283, [50 L. R. A. 548, 61 Pac. 907]), but both parties testified they were unaware of the illegality of the contract at the time. Respondent testified that this contract was repudiated, and a new agreement arrived at after the divorce was granted, whereby he was to receive five thousand six hundred dollars, or seven per cent on eighty thousand dollars, which he asserted they both agreed should be assumed to be the value of the property received from the husband. Appellant testified respondent

made an offer to her of such a proposition, but that she never agreed to it. It is this asserted second contract which respondent contends is the basis of his claim.

Respondent charged appellant additional sums for the services he performed for her after the divorce was granted and the property settlement concluded. From time to time she paid him varying amounts of money to apply on the total bill. In June, 1913, she gave him the two notes for $250 each, one payable to him, and one to his wife, to apply on the account, on which notes it was agreed respondent was to borrow money.

Respondent sent appellant several statements of account and letters asking her to make him payments. On November 1, 1913, he sent her a statement of account, the first item of which was "Bill as per agreement, $5,600.00," and according to the account the total amount due on that date was $1,286.21. This balance was never objected to by appellant prior to the trial. Ten months later, September 1, 1914, he sent her another account which he insists constituted an account stated. The first item of this account was the balance of $1,286.21 shown by the account of November 1, 1913. Then followed charges and payments showing a balance of $2,160.61 due on September 1, 1914. To this statement of account respondent received no reply, although he wrote appellant on December 19, 1914, inclosing a copy thereof, and on February 1 and 12, 1915, concerning it.

In 1915 respondent assigned the notes referred to, and the account as represented by the statement of September 1, 1914, to one Fred O. Ricketts, who commenced suit on them. According to the testimony of Neil S. McCarthy, respondent's attorney in that action, while the suit was pending appellant promised to pay the amount demanded, and to give her note for it. A demurrer was interposed and sustained. On June 30, 1915, on motion of plaintiff, the case was dismissed. After the dismissal the notes were reassigned to respondent by Ricketts, and this action followed. The notes constitute the causes of action in the first two counts, and the statement of account of September 1, 1914, alleged to be an account stated, the cause of action in the third count.

As defenses to the notes, appellant pleaded the statute of limitations, that the action brought by Ricketts was a bar to this one, that the notes were for the purpose of enabling

respondent to borrow money, which he failed to do, that as a result of such failure appellant was not liable on them, and that there was no consideration for the note given to respondent's wife. As a defense to the alleged account stated, appellant pleaded the statute of limitations, the action by Ricketts as a bar, and specifically denied the allegations of the complaint that the account was stated. In a cross-complaint appellant alleged respondent had received $3,318.86 for the use of appellant and in trust for her, and prayed judgment for that amount. In a counterclaim appellant alleged that the agreement between herself and respondent was void, and set it out *in haec verba*. She also alleged that she had paid respondent $4,512.36, $3,318.86 of which was paid under the void agreement before she knew it was void, and prayed judgment for the latter amount.

The court found in favor of respondent on all three counts, that the allegations of the answer, counterclaim, and cross-complaint were untrue, and that the amounts respondent demanded were due and owing to him.

Appellant states: "If this court should hold that the plaintiff rendered an account stated and thereby bound his client, we shall not expect a reversal of the judgment, however harsh and unjust it may be. . . . Mrs. Segno, the defendant, is not learned in the law and was not informed by the plaintiff that he was presenting to her an account stated and she was not informed of her rights and privileges in the matter; and we think sufficient objection was made to the account when presented." It is also stated: "In this case the attorney cannot bind his client by giving to her an account stated of which she had no knowledge as to its legal effect or as to any formal requirements of objections." Respondent insists there was a valid account stated, that the evidence supports the finding to that effect, and that there was no error in the rulings of the court.

1. We shall first consider the question of whether there was an account stated. In support of her position that respondent could not bind her by an account stated, appellant cites no authority.

[1] In *Auzerais* v. *Naglee,* 74 Cal. 60, 63, [15 Pac. 372], it was said: "A stated account is an agreement between both parties that all the items are true; but this agreement

may be implied from circumstances, as where merchants reside in different places, and one sends an account to the other, who makes no objection to it within a reasonable time. (*Stebbins* v. *Niles*, 25 Miss. 267; 1 Wait's Actions and Defenses, 191–198.)

"In such cases, the action is based upon the agreement, which has all the force of a contract. The original account becomes the consideration for the agreement, and it is not necessary to prove the items of such account; nor can they be inquired into or surcharged except for some fraud, error, or mistake, and such grounds must be, according to the weight of authority, set forth in the pleadings. [Citing cases.] . . .

"The term 'stated account' is but an expression to convey the idea of a contract, having an account for its consideration, and is no more an account than is a promissory note, or other contract, having a like consideration for its support."

In *Terry* v. *Sickles*, 13 Cal. 427, the court declared: "In support of an action upon an *account stated*, it is necessary to show that there was a demand in favor of the plaintiff, which was acceded to by the defendant. But the admission of the correctness of the demand need not be express and in terms. If the account be sent to the debtor and he do not object to it within a reasonable time, his acquiescence will be taken as an admission that the account is truly stated. . . . The evidence in relation to the amount of the account was properly excluded. It is not alleged in the answer that there was any fraud or mistake in the original accounting."

In *Crane* v. *Stansbury*, 173 Cal. 631, [161 Pac. 7] the plaintiff sued as the assignee of an attorney upon an account based on charges for professional services rendered. It was contended by the defendant that the fees of an attorney could not be the subject of an account stated. The court said: "The bill of an attorney for services, like any other bill, may, under proper circumstances and conditions, be the subject of an account stated." The court continued: "The court instructed the jury that when an account was rendered it became the duty of the recipient to make his objections thereto within a reasonable time, and that, if he did not do so, the account became an account stated and the foundation of an independent cause of action based upon

the account stated; also that silence and nonobjection under
the circumstances of this case for six months would consti-
tute an unreasonable time. Exception is taken to these
instructions. But the complaints made against them are
not well founded. They are unimpeachable in point of
law." It was also held that "While all questions of fraud
and mistake in combating the force of an account stated
are questions of fact for the jury, where assent is based upon
acquiescence arising from a failure to object, the length
of time which must pass before an account rendered becomes,
by virtue of the recipient's failure to object, an account
stated, is one of law for the court." In *Lane & Bodley Co.*
v. *Taylor,* 80 Ark. 469, [7 L. R. A. (N. S.) 924, 97 S. W.
441], an attorney sought to reopen an account stated. The
court declared: "When an attorney makes a charge for
services, and the same is accepted by the client, it becomes
an account stated between them, and may be sued upon as
such by him. *Wilcox* v. *Boothe,* 19 Ark. 684; *Pulliam* v.
*Booth,* 21 Ark. 421." (See, also, 1 C. J. 696, 703; *Bennett*
v. *Potter,* 180 Cal. 736, [183 Pac. 156]; *Crawford* v. *Hut-
chinson,* 38 Or. 578, [65 Pac. 84]; *Beals* v. *Wagener,* 47
Minn. 489, [50 N. W. 535]; *Gruby* v. *Smith,* 13 Ill. App.
43.)

[2] According to the evidence, after the account of
November 1, 1913, was rendered, appellant paid respondent
several amounts, for which he gave her credit; following
this the account of September 1, 1914, was mailed to her,
the first item of which was the balance shown by the state-
ment of account of November 1st, and to this statement
of account of September 1st appellant made no objection.
When appellant was under cross-examination by respondent,
she testified: "After that [referring to the divorce action
and the property settlement] you had some seven or eight
actions for me, and that account included what you did for
me for a number of years. I didn't dispute the correctness
of the bill; I thought the contract was high, Mr. Parsons."
Neil S. McCarthy testified: "Mrs. Segno came to the office,
introduced herself, and to the best of my recollection said
you [respondent] had sent her in there. This was after
the suit was filed. She said she couldn't pay up at that
time, but would give a promissory note for it for the entire
amount. I told her that if she would give some security

for the promissory note that it would be satisfactory to you. I do not recall what answer she made. However, she never gave the note to me, nor the security, nor anything else."

The evidence also shows that the relationship of attorney and client had existed between the parties from 1911 to 1915—the year the Ricketts action was brought; that during that period they discussed his compensation and had some correspondence concerning it; that they agreed he should receive for his services in the divorce action and property settlement five thousand six hundred dollars; that he reported to her the various expenses he incurred for filing fees, traveling expenses, and the like, and charges for services; that she made no objection; that the statements of account of November 1, 1913, and September 1, 1914, and the two letters of February 1 and February 12, 1915, were clear and explicit as to his claim; that between the rendering of the two statements of account she made payments without in any way questioning the correctness of the account; that appellant had a great deal of experience in business; that she conducted an enterprise—the "American Institute of Mentalism"—which yielded at one time, according to her own testimony, "anywhere from five to twenty-five hundred gross per month"; and that she had figured in litigation besides the divorce action and the case at bar.

We must assume in favor of the judgment that the court decided from the evidence, which is amply sufficient to support such a conclusion, that appellant did not misunderstand the import of the statements of account and respondent's letters, and that she realized he was demanding the amount of the balance shown by the statement of account of September 1, 1914. As shown by the evidence there was a lapse of several months after this statement of account was rendered, during which time respondent received no word from appellant; that she never disputed the correctness of the account, and that after the amount claimed to be due was demanded she said she would settle and offered to give her note for it. In our opinion it cannot be maintained that there was not evidence from which the court could have found that an account was rendered, assented to, and became an account stated.

2. Appellant next contends: "We submit that an attorney cannot receive money in a divorce case, on a void agreement

against public policy, and keep the money in fraud of his client, and cover his tracks by presenting an account stated to his client for further demands, and in this case, plead an account stated and thereby bind his client." In *Gruby* v. *Smith, supra,* the court held: "The fact that the relation of attorney and client subsisted between the parties, at the time of this alleged assent to a grossly exorbitant bill and promise to pay such a balance, should have had an important, if not controlling, effect upon . . . the point of permitting an investigation by him into the merits of the several items of the bill." It was said in *Beals* v. *Wagener, supra,* that "The court would probably scrutinize such an agreement [an account stated between an attorney and his client] closely, to see that there was no overreaching, and that the client acted with as full and candid information as the attorney can give him." **[3]** But in order to surcharge and falsify an account stated on the ground of fraud or mistake the facts constituting the fraud or mistake must be pleaded, a reopening of the account asked for, and the proof must be confined to the allegations of fraud or mistake. (*Auzerais* v. *Naglee, supra; Terry* v. *Sickles, supra; Branger* v. *Chevalier,* 9 Cal. 353; 1 Ency. of Evidence, 147.) The answer here is a general denial, and neither mistake, fraud, nor any other ground touching the account stated is alleged. The counterclaim merely alleged that the original agreement was void; that the sum of $3,318.86 was paid thereunder, and prayed for a recovery of that amount. The cross-complaint alleged only that said amount had been paid by appellant to respondent for her use and for her benefit, and prayed for judgment accordingly. It is clear, therefore, that there is no direct allegation of fraud, nor are any facts pleaded upon which a finding of fraud could be predicated.

However, assuming that the asserted fraud was pleaded, that the reopening of the account stated was asked for, and that evidence was offered to support such a charge, still there is ample evidence from which the court could have concluded that the void contract was repudiated by the parties, and the second contract for compensation substituted. No claim is made that the latter contract was invalid. Appellant testified: "I had conversation with him *after this matter was concluded* in regard to his compensation for

the work he had done. He asked me what I thought would be fair as a settlement, and I said, 'Mr. Parsons, I don't know.' He asked me if I thought seven per cent on a value of eighty thousand dollars would be equitable, and I said I didn't know, because I could get no basis of value on the properties that I received; it was left open that way." On the other hand, respondent testified: "Q. The account you rendered included what this contract called for up to the point that it was paid for, did it not? A. No, that is not true. Q. Does not the account on its face show— A. After the settlement with her husband in which she obtained, as she claimed, one hundred and fifty thousand dollars or two hundred thousand dollars' worth of property, she repudiated that contract, and said that she would not settle on the terms of it, but that she would—I finally asked her what she would pay me, and she said that she would give me seven per cent on eighty thousand dollars, and that she was perfectly satisfied to call the amount for that particular service five thousand six hundred dollars, and we settled on those terms. She repudiated the contract entirely." At the trial, the following colloquy occurred: "Mr. Putnam: When you were first sued on the assignment made here to Mr. Ricketts, *Ricketts* v. *Segno,* they sued on the contract, didn't they, the same contract? Mr. Parsons: I object to that as calling for a conclusion, if your Honor please; the record is the best evidence. The Court: You repudiated it then, didn't you? A. No, your Honor. Mr. Putnam: The court found it void. The Court: She pleaded the invalidity of it. It just goes to show how much effect you get out of testimony that a thing is or is not repudiated. Now, the witness has testified that she never repudiated that contract. I find that she did, because she pleaded its invalidity."

The first item in the account is the charge of five thousand six hundred dollars for the original service, and this is the amount respondent testified was agreed upon for such service after the original contract was repudiated. The fact that this sum was included in the statement of account of November 1, 1913, suggests that the court, as indicated by the remark it made during the above colloquy, concluded that the original contract was repudiated by appellant. In other words, such a finding is to be implied from the finding

that an account was stated. That the second contract was a new agreement and that the old one was repudiated by both parties. is further borne out by the fact that appellant testified that Mr. Segno, in the trial of another action, stated that the property appellant received from him was actually worth from one hundred and fifty thousand dollars to two hundred thousand dollars. As already pointed out, appellant's only assignment of fraud is the alleged inclusion by respondent in the account stated of the demand based upon the void contract. [4] Since this was the only assignment of fraud, and there was evidence from which the court could have found the void contract was repudiated by the parties, and a new one entered into in lieu thereof, appellant's claim of fraud cannot be sustained.

3. Appellant further contends that "The court erred in not allowing defendant to show that $4,512.36 paid to the plaintiff was the basis of all accounts rendered and was included in the purported account stated, and in finding [finding 3] that the defendant became indebted upon an open account, etc., while the evidence shows that there was a written agreement which was against public policy and void." No particular evidence is referred to under the first point as having been improperly excluded, and it is not stated that appellant made any offer to prove that the said sum formed the basis of all the accounts upon which the balance shown by the account stated was struck. Concerning the asserted error in finding .3, we have already stated there was evidence from which the trial court could have found the original contract to have been repudiated and another substituted. The evidence shows the account to have been open and current, for items were added and credits given from time to time.

Error is assigned to finding 7 upon the ground that it is not supported by the evidence. This finding is to the effect that the sum of $2,660.61, with interest and costs, is owing to respondent. As heretofore stated, the evidence on the subject of the account stated was sufficient to support the findings, and upon this hypothesis the amount of $2,160.61 is correct. Appellant does not object to the findings as to the promissory notes, which make up the other five hundred dollars. These notes were admitted in evidence, thus supporting the finding of the court as to the amount due thereon.

Error is assigned to the conclusions of law, which are to the effect that the said amount of $2,660.61, with interest and costs, was owing to respondent, but from what we have already said it follows there is no merit in this contention.

Appellant assigns error to findings 4, 5, and 6, "on the ground that the court would not allow any evidence on those issues." On this assignment of error we are merely referred to the transcript on appeal for certain rulings of the court on the admission and rejection of testimony, but no attempt has been made to print in the briefs these portions of the record, or to show wherein the errors, if any, lie. [5] Such an assignment of error does not conform to the requirements of section 953c of the Code of Civil Procedure, and hence does not call for consideration. The same disposition is to be made of appellant's further contention that "There are other questions involved in this appeal, particularly set forth in the assignment of error to which we beg leave to refer without reprinting." This has reference to some seventeen specifications of error in appellant's motion for a new trial.

Judgment affirmed.

Wilbur, J., Sloane, J., Lennon, J., Shurtleff, J., and Angellotti, C. J., concurred.