[Civ. No. 7077. First Appellate District, Division One.—July 7, 1931.]

S. JOSEPH THEISEN, Appellant, v. ELEANOR M. KEOUGH, Respondent.

J. J. Dunne for Appellant.

Harry I. Stafford for Respondent.

PARKER, J., *pro tem.*—This is an action to recover a certain sum of money alleged to be due plaintiff on account of services performed for the benefit of the defendant and at her instance and request. The complaint is in two counts. The first count alleges the execution of a contract under which the services were performed and which contract expressly provided the amount and terms of compensation. The second count is on a *quantum meruit.* After trial judgment went for the defendant, the lower court finding as to the first count that the contract between the parties was against public policy and unenforceable and as to the second count that the plaintiff had been paid in full for all services rendered. From this judgment plaintiff appeals.

The plaintiff is an attorney at law practicing in this state. Some time in August of 1926 the defendant was brought to his office by a relative of defendant, the said relative having had occasion to employ the plaintiff on some former occasion. The defendant, a married woman, was in the midst of marital discord; she suspected her husband of sundry indiscretions, and related to plaintiff that her husband had threatened to leave her within the month. Plaintiff's first inquiry was as to the property rights involved, and the information derived led to defendant being advised

to forthwith place a declaration of homestead upon the premises occupied by defendant and her spouse.

Taking now the text of appellant's brief, it reads as follows: "During the succeeding days, appellant and respondent had further conferences respecting the items comprising the community property and concerning the details of the husband's conduct. From these conferences it developed that the present respondent had no direct evidence of the infidelity of which she was convinced her husband was guilty, and while her husband had committed some acts of cruelty upon her, they were not, in the appellant's opinion, so sufficiently serious as to constitute a particularly aggravated case. The appellant accordingly advised the respondent that if through the assistance of friends or relatives evidence could be procured of the husband's infidelity, the appellant could then through due proceedings obtain for the respondent a substantial share of the community property, and such allowance for maintenance and support of herself and her minor daughter as would be reasonable. In reply to this, the respondent stated that she did not know of any relative or friend that could render her this assistance, and she stated that she had no means with which to employ anyone to render this service or to pay the expenses of the suggested maintenance proceedings against her husband, or to recompense the appellant for his services or outlays in her behalf. These conditions led up to the making of the agreement of August 30, 1926, because upon ascertaining the destitute financial condition of the respondent, the appellant informed her that if he were to undertake to advance for respondent the expense of such investigations and proceeding, which expense was likely to run into a large amount, and render professional services in her behalf, which services, in view of a probable bitter contest, were very likely to occupy considerable time, labor and ability, the appellant should have, as compensation for his advances and services, in addition to any allowances that might be made by the court, a proportion of any money or property which might be recovered by or for the respondent through or by reason of proceedings by him, contingent, of course, upon any recovery being made. In other words, this appellant was to get nothing to recompense him for either advances or services unless the

contemplated proceedings against her husband were success-
ful, in which event he was to receive a proportionate amount
of the recovery. The respondent agreed to this, and ac-
cordingly the contract was entered into." As indicated,
the foregoing statement of the case is taken *verbatim* from
the brief of the appellant and does, no doubt, present the
appellant's view of the case in the light most favorable to
him.

The agreement referred to as the contract of August 30,
1926, is in words and figures as follows:

"San Francisco, August 30th, 1926.
"Mr. S. Joseph Theisen.

"In consideration of indebtedness and/or expenses in-
curred and/or advanced and services rendered by you for
my account in investigating the conduct and actions of my
husband and procuring evidence thereof and proceedings
against him by reason thereof, I agree to pay you the
amount of such indebtedness and expenses and 15% of any
money or property that may be awarded or set apart to me
in any such proceeding and/or that may be recovered by me
from him, this in addition to any amount that may be
awarded for costs and/or attorney's fees, and I assign to
you a *proportionate interest in such money* or property
equal to the aggregate of such indebtedness, expenses and
percentage.

"ELEANOR M. KEOUGH."

As hereinbefore recited the trial court determined that
this contract came within the class repugnant to a sound
public policy.

In the case of *Newman* v. *Freitas,* 129 Cal. 283 [50 L. R. A.
548, 61 Pac. 907, 910], wherein the facts are similar to
the facts in the instant case and the contract which was
involved was in its essentials like the one before us, the
court, quoting a Michigan case (*Jordan* v. *Westerman,* 62
Mich. 170 [4 Am. St. Rep. 836, 28 N. E. 826]), says:

" 'Public policy is interested in maintaining the family
relation. The interests of society require that those rela-
tions shall not be lightly severed, and that families shall not
be broken up for inadequate causes or from unworthy
motives; and where differences have arisen which threaten
disruption, public welfare and the good of society demand
a reconciliation, if practicable or possible. Contracts like

the one in question tend directly to prevent such reconciliation, and if legal and valid, tend directly to bring around alienation of husband and wife, by offering a strong inducement, amounting to a premium, to induce and advise the dissolution of the marriage ties as a method of obtaining relief from real or fancied grievances, which otherwise would pass unnoticed.' ''

In *Parsons* v. *Segno*, 187 Cal. 261 [201 Pac. 580], we find the doctrine stated almost by way of dogma, in this language: "It is not disputed that this contract was void as against public policy, being a contract for a contingent fee in a divorce action."

In the case of *Ayres* v. *Lipschutz*, 68 Cal. App. 134 [228 Pac. 720, 721], the doctrine was reaffirmed by the Supreme Court on a petition for hearing after decision by a District Court of Appeal. The District Court had held the contract in question to be valid, but affirmed the judgment of the lower court upon another ground. The Supreme Court, satisfied with the judgment in as far as the additional ground of support was deemed sufficient, nevertheless was careful to express its views on the contract lest the denial of the petition for a. hearing be deemed an affirmance of all that was contained in the opinion of the District Court of Appeal. The language of the Supreme Court was as follows: "We are of the opinion that the contract herein comes within the rule announced and applied in *Newman* v. *Freitas*, 129 Cal. 283 [50 L. R. A. 548, 61 Pac. 907], and referred to in *Parsons* v. *Segno*, 187 Cal. 260 [201 Pac. 580], *for the reason* that under it the attorneys were directly and financially interested in preventing a reconciliation and bringing about a divorce." And without setting out the details of the contract referred to in this citation, it is sufficient to state that it was in its terms more worthy of approval than the one before us now.

Authorities from almost every jurisdiction support the doctrine as we have announced it. Indeed, appellant seems in harmony with the rule and offers no authorities in opposition; nor does he question the sufficiency of the reasoning behind the rule. Appellant contends that the contract in question does not come within the rule. He contends first that public policy is an elusive variant and quotes much authority to the effect that courts should hesi-

tate before declaring the terms of any instrument to conflict with a sound public policy. We have little difficulty in adopting the theory advanced in this respect. The appellant urges that every contract should be so construed with reference to its terms to the end that it might harmonize with such a policy as would permit its enforcement. Within reasonable limits, though not unqualifiedly, we accede to this. Having thus approached the contract before us, appellant contends that there is nothing in the contract that in any way refers to or that can be construed as referring to a divorce action and that from the terms of the contract it may be reasonably inferred that the purport thereof was to bring about an amicable adjustment of property rights between the spouses. And in this connection it is urged that the term "proceeding" as used in the contract refers to, or at least includes, any form of proceeding by or through which an adjustment of property rights might be effected, as, for instance, a voluntary conveyance.

Through some manner of twisted reasoning appellant urges that this court in construing the instrument must take up the contract "by all fours". When we do this we find nothing more than the ordinary contingent divorce contract condemned in the cited cases. From the presentation of the facts as made by appellant, hereinbefore quoted, we more clearly see the intent of the contemplated arrangement. Under what possible theory of amicable proceeding could the fidelity, or lack thereof, of either spouse become the object of inquiry? We cannot readily cite any controversy between spouses wherein evidence of adultery on the part of either would be competent or material other than in actions for divorce or separate maintenance. Surely, as far as human experience has shown, where one spouse requires evidence of the other's infidelity to enforce a settlement of property rights, the resultant adjustment cannot be classed as amicable.

We are satisfied that the appellant's own statement of the case discloses that the true and intended meaning and effect of the contract was that appellant undertook to furnish evidence of the husband's infidelity or such other conduct as would authorize and warrant a divorce and distribution of the community property, and from that portion of said property which might be awarded to the wife the appellant

was to share, contingent upon his success in procuring the necessary evidence.

Appellant cites an abundance of authority to the end that husband and wife may properly agree between themselves as to the division of their property providing that divorce is not facilitated and that collusion is not shown. Such cases have no application to the question under discussion. The rule we have discussed deals only with the activities of an interloper who might, by reason of a separate and individual interest in the proceeds of the community, be tempted to widen the breach between the spouses.

We conclude that the contract before us contravenes a sound public policy and is not enforceable and to this extent we affirm the conclusion of the court below.

We come now to the question of the reasonable value of the services actually rendered. For the purposes hereof it is unnecessary to pass upon the point as to whether or not *quantum meruit* may be invoked.

There appears some conflict in the testimony regarding the services actually rendered. Appellant's testimony is to the effect that the services embraced numerous and lengthy consultations with respondent and with her husband and the latter's counsel; that it involved an intricate examination into property titles and the preparation and filing of two complaints and a hearing on the return of an order to show cause relative to alimony and counsel fees. Respondent, on the other hand, testifies that the interviews were few in number and covering not more than one-half hour at any one time.

Appellant was first consulted about August 25th and the first complaint was filed on September 15th of the same year. An amended complaint was filed enlarging upon the grounds for divorce, it being the explanation of appellant that he made the charges in the original complaint somewhat mild in order to avoid scandalous litigation and more in the nature of a warning to the husband to the end that the latter might secure counsel with whom appellant might negotiate toward a property settlement. An amended complaint was filed on October 22d of the same year, and thereafter the trial court upon and after a hearing awarded to the plaintiff therein, respondent here, the sum of $100 as and for counsel fees, which said amount was received by the

appellant. No services appear to have been rendered subsequent to this and within a few days thereafter appellant was dismissed and his services terminated. From the foregoing facts the court below in the instant case found that appellant had been fully paid for all services that he rendered; in other words, that the services rendered by appellant were reasonably worth the sum of $100 and no more.

In approaching a determination of the question involved we may note preliminarily certain general principles applicable. ■ Any recovery by appellant cannot arise out of the contract either through the express terms thereof or by way of reasonable value for services rendered. Again quoting from the opinion of the Supreme Court on application for hearing in the case of *Ayres* v. *Lipschutz, supra:* "The contract being void as against public policy afforded no basis for a recovery which could have been had only upon a *quantum meruit.*" So, therefore, we must eliminate once and for all any consideration of the terms of the contract. We therefore find the parties with no agreement or contract regulating the compensation to be paid; the attorney proceeding with the cause under the implied contract that he will be compensated in a reasonable amount for services performed.

■ Let us turn then to the original complaint prepared by the appellant herein. We find this allegation: "That the plaintiff has not sufficient means to enable her to support herself or said minor child during the pendency of the action or to pay her counsel herein." The said complaint was duly verified. Upon this allegation the order to show cause was issued directing the defendant husband to appear and show cause why an order should not be made directing him to pay counsel fees and alimony *pendente lite*. Between the date of the order to show cause and the date of hearing thereon the amended complaint had been filed so that on the date of the hearing all services for which compensation is claimed had been rendered. The amended complaint contained the same allegation as to the wife's inability to pay counsel fees or costs.

From the time of the Sharon case, 75 Cal. 1 [16 Pac. 345], running through all of the subsequent decisions on the point, it has been conceded that the power of the court to allow counsel fees to a wife in an action for divorce should

only be invoked in cases where, without such allowance, she would be unable to prosecute her cause. And if, whether she be with or without funds, counsel is engaged by her upon her own credit or through some agreement for future payment resting upon her credit or where counsel undertakes to carry on her suit through philanthropic or humane motives, a showing of that fact will determine the court's action in the matter of allowance of counsel fees. And it would seem but just to conclude that where, as here, counsel urges upon the trial court the poverty of the wife and her inability as a result of such poverty to pay for the aid of counsel in prosecuting her cause, and thereafter the court after a full hearing finds the amount necessary and reasonable in view of all of the circumstances of the case to compensate such required service, the order thus made should not be wholly ignored. In the divorce case there was such a hearing and the court, fully advised through its own records and such testimony as may have been received, determined that $100 was reasonably sufficient for the services rendered or to be rendered at that stage of the proceeding.

Appellant here interposes the contention that such allowance did not embrace past services but was solely to enable the wife to further prosecute her action and cites authorities in support of his point. The authorities cited do not support the contention made. While it is true that the court will not order an award or allowance for costs already paid or even counsel fees theretofore compensated, there is no holding calling to our attention where a court has refused to make its order providing compensation for counsel who has instituted a divorce proceeding for a wife without funds or credit. If appellant's contention were sound it would result in a destitute wife being unable to ever get before a court to present her petition for funds with which to prosecute her cause. There may be certain conditions wherein appears fraud or concealment that would warrant the holding of a separate and individual liability but such is not the case before us.

There must be a more or less open relationship between court and counsel in this class of cases to the end that full disclosure be made of all of the facts surrounding each case. And where an attorney represents to the court that

he looks entirely to the court for his compensation and through such representation invokes the court's award and accepts and retains the sum awarded, it would seem that a decent respect for the ethics of the profession would demand that such attorney be not permitted to repudiate his position and maintain his separate action based upon the theory of employment by the wife under an implied or express contract whereby liability rested upon her for payment. In any event, the determination of the court on the order to show cause, presumably made after a full and fair inquiry into the facts of the case, stands as some evidence of the value of the services. And at the trial of the instant case the court below determined likewise that the sum allowed was sufficient to compensate the appellant for the services he rendered. The only evidence adduced other than the records of the divorce case and the testimony herein noted was the opinion of the appellant that the services were reasonably worth the sum of $3,000.

█ It is too well settled to require citation that the value of attorney's services is a matter with which a judge must necessarily be familiar. When the court is informed of the nature and extent of such services, its own experience furnishes it with every element necessary to fix their value. (*Spencer* v. *Collins*, 156 Cal. 298, at p. 307 [20 Ann. Cas. 49, 104 Pac. 320].)

While the allowance of counsel fees is perhaps less than we would have allowed under the same circumstances, in view of the very wide discretion vested in the trial court, we are not prepared to disturb it.

The judgment is affirmed.

Tyler, P. J., and Knight, J., concurred.