[Civ. No. 10786.  Second Appellate District, Division Two.—February 4, 1936.]

THE ALAMITOS LAND COMPANY (a Corporation), Appellant, v. THE TEXAS COMPANY (a Corporation), Respondent.

Oliver O. Clark and Sherman Anderson for Appellant.

Charles C. Stanley, R. K. Barrows and E. S. Williams for Respondent.

GOULD, J., *pro tem.*—By the terms of an oil lease dated February 26, 1927, defendant corporation as lessee agreed to pay plaintiff corporation as lessor one-fifth royalty for oil and gas produced on the latter's property. The lease also specifically provided that if gas produced on the premises "shall be sold by lessee, said lessee shall pay said lessor one-fifth of the amount . . . received therefor" and also that "in the event that said lessee shall have produced or caused to be produced and saved gasoline or other products from the gas taken from said premises, the lessor shall be entitled to one-fifth royalty of such gasoline or other products". Production under the lease commenced in May, 1927, and on January 27, 1933, plaintiff filed the within action for an accounting for royalties under the lease. No question is raised as to the payment for oil produced. ■ The only controversy relates to the royalties upon natural gas in so far as gasoline was manufactured from such gas.

Defendant delivered the "wet" gas from the property involved, as well as from numerous other leases, to an absorption plant owned and operated by General Petroleum Corporation, where the commingled total was treated for production of gasoline. Of the gasoline so produced apportionment was made to the various leases in proportion to their respective contributions to the total gas treated. Payment was made by General Petroleum Company to defendant herein under certain contracts, by which, in effect, defendant was to receive as the sale price of the natural gas delivered, 45 per cent of the gasoline manufactured or produced from such gas. Although the contract between defendant and General Petroleum provided that defendant, at its option, might take its 45 per cent royalty in kind—that is, 45 per cent of the gasoline extracted from the "wet" gas—such option was never exercised, and throughout the period of production in controversy defendant received its payment in cash. Of the cash so received from General Petroleum for the gasoline so produced by it from plaintiff's leases, defendant made monthly remittances to plaintiff of one-fifth, transmitting with the

remittances statements showing the number of gallons of gasoline credited to defendant by General Petroleum, the rate per gallon, the total credit and the computation of "gasoline royalty—$\frac{1}{5}$", with the figures for the number of gallons and the computed cash amount of the remittance. After August, 1928, these statements also showed the meter readings of the total amount of gas delivered, the total amount of gasoline recovered and the notation "Royalty of $\frac{1}{5}$ of 45% on gasoline recovered", with the appropriate computations in number of gallons and cash due plaintiff therefor.

Defendant's books were at all times open to plaintiff for inspection, and no claim is made or can be made that plaintiff was not apprised at every stage of the transactions of the operations of defendant under its lease with plaintiff and of defendant's method of making its monthly settlements for gasoline recovered from the "wet" gas. Plaintiff's sole claim is that defendant in paying for the gasoline recovered from the "wet" gas should have paid, not one-fifth of the cash amount it received from General Petroleum, but the cash equivalent of one-fifth of the entire amount of gasoline manufactured by General Petroleum from the gas delivered by defendant from plaintiff's lease. In other words, by this action in accounting plaintiff seeks to recover upon the basis of one-fifth of all gasoline manufactured by General Petroleum from the gas produced from plaintiff's land, instead of upon the basis of one-fifth of 45 per cent of such gasoline. Findings and judgment were in favor of defendant and plaintiff appeals.

Appellant relies upon the theory that the natural gas from its lease was not sold by respondent to General Petroleum, but that respondent was itself, through the agency of General Petroleum as bailee producing gasoline from the natural gas. By the terms of the lease, as noted above, for gas sold, appellant was to receive "one-fifth the amount received therefor", while for gasoline produced appellant became entitled to "one-fifth royalty of such gasoline or other products". Plainly, in our opinion, the contracts between respondent and General Petroleum constituted a sale and not a bailment of the gas delivered by respondent from appellant's lease. Particularly the contract of May 16, 1929, can be viewed only as a contract for the sale of gas. Words such as "purchase", "market", "sell and deliver", "agrees to

pay", are used in the agreement, and these words commonly are employed to indicate an intention to pass title by sale. Furthermore, by the very plan of gasoline production there was a commingling of the gas from appellant's lease with gas from numerous other sources, so that whatever gas came from appellant's property lost its identity completely.

Courts in analogous situations involving an ore sampling mill (*Chisholm* v. *Eagle Ore Sampling Co.*, 144 Fed. 670), a flour mill (*Woodward* v. *Semans*, 125 Ind. 330 [25 N. E. 444, 21 Am. St. Rep. 225]), a grain elevator (*Potter* v. *Mt. Vernon etc. Co.*, 101 Mo. App. 581 [73 S. W. 1005]), and like cases, have interpreted similar contracts as constituting sales and not bailments, and the distinction between the two is pointed out in the following language in the case of *Scott Mining & Smelting Co.* v. *Shultz*, 67 Kan. 605 [73 Pac. 903]: "If the identical thing delivered is to be returned, it is a bailment, and there is no transfer of title; but if the one to whom it is delivered may return another thing of the same kind, or an equivalent in the form of money, or otherwise, it will ordinarily constitute a sale and effect a change of title." Also, in *Norton* v. *Woodruff*, 2 N. Y. 153, the difference between the two classes of contracts is thus effectively defined: "The distinction between an obligation to restore the specific thing received, or of returning others of equal value, is the distinction between a bailment and a debt."

In the light of these definitive judicial expressions we have no difficulty in determining that the contracts entered into by respondent with General Petroleum for the extraction of gasoline from the gas yielded by appellant's property constituted sales and not bailments of the gas. (See, also, *Martin* v. *Amis*, (Tex. Com. App.) 288 S. W. 431.) This is further borne out by the fact that for all gas delivered and for all gasoline extracted respondent was paid in cash and not in kind, although the amount of gasoline produced and the prevailing market price of such gasoline were used as measuring sticks to determine the cash payments. Thus whatever may have been the legal effect of the wording of the contracts, as an actual matter of fact and independently of any interpretation of their language which may now be made, there was in effect a sale of the gas and not a bailment. The entire course of dealing between respondent and General Petroleum was consistent only with a sale.

■ Another consideration must determine this appeal in respondent's favor. In the monthly settlements between appellant and respondent the latter submitted statements which, at least after August, 1928, disclosed upon their face the entire transaction between the parties, the basis of computation, the fact that respondent was paying royalty of one-fifth upon 45 per cent of the gasoline recovered, and every other fact necessary to give appellant complete notice of all the details of the matter. Not only will appellant be presumed to have actual notice from these statements, but the testimony shows that appellant was in fact put upon notice; for upon February 8, 1929, it wrote to respondent making inquiry as to the reason for the payment of one-fifth of 45 per cent instead of one-fifth of the total gasoline recovered. Respondent's prompt reply to that letter answered the inquiry by stating in effect that reliance was had upon the fact that the transaction with General Petroleum was a sale of the "wet" gas and that payments of royalty to appellant were made upon the basis of cash received from such sale. The trial court was correct in its conclusion that the monthly settlements amounted to a series of accounts stated, and that by accepting payment without objection appellant assented to the correctness thereof and could not thereafter be heard to question the same. (*Hansen* v. *Fresno Jersey Farm Dairy Co.*, 220 Cal. 402 [31 Pac. (2d) 359].)

■ If doubt be entertained as to the form of the monthly statements prior to August, 1928, whether or not they constituted accounts stated, or if question be raised as to the interpretation of the letter contract in effect at that time—whether it amounted to a contract of sale or bailment—the points become immaterial because recovery for that period would in any event be barred by the statute of limitations, being for a period more than four years antedating the commencement of the within action.

Judgment affirmed.

Wood, J., and Crail, P. J., concurred.