[Civ. No. 9883. Second Appellate District, Division One.—May 20, 1936.]

F. W. REHBOCK et al., Respondents, v. THE RESERVOIR HILL GASOLINE COMPANY (a Corporation) et al., Defendants; THE RIO GRANDE OIL COMPANY (a Corporation), Appellant.

H. L. Dunnigan and Gordon A. Goodwin for Appellant.

Hy Schwartz and Clock, McWhinney & Clock for Respondents.

SHINN, J., *pro tem.*—Plaintiffs, lessors under an oil and gas lease dated July 12, 1922, recovered from Rio Grande Oil Company, assignee of the original lessees, W. R. Ramsay and H. T. Coffin, certain sums as royalties, which the trial court found to be due in addition to the royalties theretofore paid under the lease. Defendant Rio Grande, hereinafter referred to as the defendant, appeals.

The lease provided that "In the event that petroleum, oil, naphtha, natural gas, asphaltum or hydrocarbon, or other kindred or like substances are found in and produced from the demised premises, then the Lessee shall pay the Lessor as royalties or rentals and in the place and stead of all other rentals herein provided, one-sixth (1/6) of the net proceeds derived from the sale of said minerals produced, saved and sold by the Lessee; said minerals being those which may remain after taking from said total minerals any quantity required and used for fuel purposes in any mining or drilling operation carried on by the Lessee under the lease. Net proceeds or royalties as the expressions are used in this lease, shall be deemed to be gross receipts of sales of minerals produced from the demised premises and actually collected in cash by the Lessee, less taxes paid on said product or on said sales, or the proceeds thereof, and the usual charges for making said sales and for delivery and for the use of tanks, pipe lines, cars and storage facilities, and for insurance and for loss from fire or leakage, and a reasonable charge for the

maintenance of the equipment of the Lessee used in storing, transporting, and selling said products based on cost nor shall the Lessee be obliged to account for any proceeds which using reasonable diligence he has been unable to collect. The Lessee shall on or before the 10th day of each month, prepare a statement of the amount of minerals produced and saved from the said premises during the previous month upon which the Lessor is entitled to royalties and also a statement of the amount of sales made during said preceding month, and the amount of collections made during said preceding month and the amount of royalties on said collections to which the Lessor is entitled, and shall within said period furnish said statement to the Lessor and pay the Lessor the royalties on said collections to which he is entitled in accordance with said statement and the terms of this lease. The Lessee agrees that the Lessor or his legal representative shall at all reasonable times during business hours, have access to the books and accounts of the Lessee with reference to the operations of the Lessee under this lease, together with the right to examine and gauge any and all tanks and wells, to the extent necessary for the purposes of verifying the statement of the Lessee.''

The complaint was in two counts, the first alleging that the defendants had failed to account to the plaintiffs for sufficient royalty on the gasoline extracted from the wet gas, and the second count charging the defendants with failure to account for all the dry gas remaining after the extraction of gasoline from the wet gas.

A well was brought in from which oil and gas were produced; Ramsay, who acquired the interest of Coffin in the lease, organized The Reservoir Hill Gasoline Company, the capital stock of which, as well as the lease, was acquired by Rio Grande in 1926. Under an agreement with Ramsay, Reservoir Hill took the wet gas and extracted the gasoline therefrom in its absorption plant, paying Ramsay and plaintiffs therefor a royalty of the value of 35 per cent of the gasoline recovered, retaining 65 per cent for itself, and also returning all of the dry gas. For about two years statements were rendered each month by Reservoir Hill to plaintiffs, showing the total gasoline sales, the 35 per cent royalty, and plaintiff's one-sixth thereof, for which payments were made by checks of Reservoir Hill to plaintiffs. Commencing with the month of May, 1926, Rio Grande furnished monthly

statements to plaintiffs, accompanied by its checks. These statements showed the total quantity of gas received from the well, the theoretical gasoline content, the total amount of gasoline sold and recovered the preceding month, the amount of the total royalty of 35 per cent, and the lessors' one-sixth thereof. As to the dry gas, the statements showed the total amount of gas received from the well, deductions for plant fuel, shrinkage and recirculation, the amount of dry gas returned to the well, and the lessors' one-sixth thereof.

Plaintiffs' recovery, which was limited to a period of four years preceding the commencement of the action, was upon the theories, first, that the lessee was not authorized to make any deduction for the cost of extracting the gasoline from the wet gas, and that therefore the lessor should receive one-sixth of 100 per cent of the selling price of the gasoline; second, that the gasoline was paid for not at the market price but at an arbitrary and lesser price fixed by defendant; and, third, that the defendant did not account or pay for all of the dry gas. Plaintiffs did not recover anything on account of the excess of the market value over the price paid for their share of the royalty of 35 per cent, but the amount which the court found they were entitled to receive as royalty on the remaining 65 per cent of the gasoline was computed at higher prices than those used by defendant in paying plaintiffs' share of 35 per cent royalty.

As one of its several defenses the defendant urged in the trial court, and urges here, that the statements rendered to plaintiffs from month to month, accompanied by checks which were received and cashed by plaintiffs without objection, constituted so many accounts stated between the parties, whereby the matters sought to be litigated here were agreed to and settled and constituted the accounting and royalty payments due from defendant according to the lease. This defense, in our opinion, is sound and must be sustained. Over a period of years plaintiffs received their monthly statements and checks without making any objection thereto. They knew or should have known, and at least one of them, Clara S. Rehbock, testified that she did know, that the lessors were being paid one-sixth of 35 per cent royalty on the gasoline extracted from the wet gas. These statements were rendered under the provisions of the lease by which they were required. Plaintiffs had the right to examine the de-

fendant's books, which they did not seek to do, except in one instance which is not important here. The action is not based upon fraud or mistake. The only charge made was of a failure to fully and correctly account for and pay the royalties due.

The questions involved upon this branch of the case have been decided recently by Division Two of this court in the case of *Alamitos Land Co.* v. *Texas Co.*, 11 Cal. App. (2d) 614 [54 Pac. (2d) 489], by a decision which is now final. Under facts practically the same as those we have to consider, it was held that monthly statements of gasoline extracted from wet gas and sold by the lessee, accompanied by checks in payment of the lessor's royalty, accepted and retained without objection by the lessor, constituted accounts stated, conclusive between the parties thereto as to the correctness of the basis and the results of the accounting.

 It is fundamental that an account stated amounts to an agreement between the parties that a certain sum shall be paid and accepted in discharge of an obligation. (1 Cor. Jur., p. 689; Thornton's Law of Oil and Gas, 4th ed., vol. 1, p. 716, sec. 285; *Hansen* v. *Fresno Jersey Farm Dairy Co.*, 220 Cal. 402 [31 Pac. (2d) 359]; *Parsons* v. *Segno*, 187 Cal. 260 [201 Pac. 580]; *Auzerais* v. *Naglee*, 74 Cal. 60 [15 Pac. 371]; *Crane* v. *Stansbury*, 173 Cal. 631 [161 Pac. 7]; *Terry* v. *Sickles*, 13 Cal. 427.)

It is also fundamental that an agreement otherwise valid may be set aside only for fraud, mistake, duress or upon other grounds invalidating the free consent of a contracting party (12 Cal. Jur., p. 806; *Johnson* v. *Fletcher*, 97 Cal. App. 153 [274 Pac. 1001]). An account stated falls within these rules. (*Wenban Estate, Inc.*, v. *Hewlett*, 193 Cal. 675 [227 Pac. 723]; *Gardner* v. *Watson*, 170 Cal. 570 [150 Pac. 994]; *Parsons* v. *Segno, supra; Auzerais* v. *Naglee, supra.*)

 It is contended by plaintiffs that they should be allowed to recover under the theory that Reservoir Hill Company is and has been since June of 1926 the *alter ego* of defendant Rio Grande, and that therefore all transactions between Rio Grande and Reservoir Hill were void. The complaint alleged the purchase of the Reservoir Hill stock by Rio Grande in June, 1926, but did not allege the date when plaintiffs learned of that fact. The court found that Reservoir Hill was the *alter ego* of Rio Grande, but we are unable

to see that if this were the fact it would give plaintiffs the right to an accounting where otherwise they would have none. No such right exists after the accounts have been stated and paid, unless the accountings and settlements should be set aside on equitable grounds. The questions that might arise out of the stock control of Reservoir Hill are immaterial so long as the accountings stand. We are unable to see wherein the alleged domination and control of Reservoir Hill by Rio Grande can be relied upon to impeach the accounts stated. No concealment of the stock ownership is alleged or found by the court. No fraud or breach of duty is alleged to have resulted from the failure of Rio Grande to disclose its stock ownership. It is a fair inference that if plaintiffs were satisfied with a share of 35 per cent gasoline royalty paid by a stranger they would likewise have been satisfied with the same royalty paid by a subsidiary. That question, however, was not presented to the court. Upon the record before us it is clear that the fact that Reservoir Hill was a subsidiary of Rio Grande during the time the accountings were being made does not tend in any degree to invalidate the settlements.

There are other defenses which would have to be considered if the one we have discussed were not controlling, such as the construction of the contract by the parties with respect to the handling of the gas from the well, the right of the defendant to be reimbursed for the reasonable cost of extraction of gasoline from the wet gas, and the defenses of estoppel and laches. It is unnecessary to pass upon these defenses in view of our conclusion that plaintiffs are foreclosed, by reason of the monthly statements of account to which they have agreed, from charging defendant with a liability for additional royalty.

The judgment is reversed.

Houser, P. J., and Doran, J., concurred.