[Civ. No. 25020. Second Dist., Div. Two. May 15, 1961.]

G. WITHERS, Respondent, v. BURR M. MATTHEWS et al., Appellants.

140

Paul A. Mason for Appellants.

Morton R. Goodman and Morton B. Harper for Respondent.

FOX, P. J.—This is an action on an account stated. The only question is whether the evidence is sufficient to support the findings and judgment that the parties had agreed upon a specific sum that would constitute the debt owed by defendants to plaintiff's assignor (hereafter referred to as plaintiff), and that defendants had expressly or impliedly promised to pay the same.

Prior to January 14, 1958, plaintiff had represented defendants in various legal matters and had expended various sums of money on behalf of defendants so that a debt arose which remained largely unpaid. Statements were sent from time to time and there were oral and written communications in which attempts were made to agree upon an amount and how and when payments were to be made. A complaint was filed on August 18, 1958, alleging five causes of action including one upon an account stated. The action was tried on the first amended complaint which also contained a cause of action on an account stated. It was agreed at the trial that

this theory would be tried first. Plaintiff prevailed and dismissed his other causes of action.

█ An account stated amounts to an agreement between the parties that a certain sum shall be paid and accepted in discharge of an obligation. (*Rehbock* v. *Reservoir Hill Gasoline Co.*, 14 Cal.App.2d 233, 237 [57 P.2d 1357].) █ "To constitute an account stated it must appear that at the time of the statement an indebtedness from one party to the other existed, that a balance was then struck and agreed to be the correct sum owing from the debtor to the creditor, and that the debtor expressly or impliedly promised to pay to the creditor the amount thus determined to be owing." (1 Cal. Jur.2d 367; *Bennett* v. *Potter*, 180 Cal. 736, 745 [183 P. 156].) Defendants admit that there was a debtor-creditor relation between the parties. But they dispute that there was ever an agreement upon the amount or a promise to pay that amount.

█ The principal question for us to consider is whether the evidence supports the finding "that it is true that shortly after January 15, 1958, and prior to January 31, 1958, an account was stated by and between [plaintiff] and the defendants, and each of them, wherein and whereby it was agreed and settled that defendants and each of them were then and there indebted to [plaintiff], over and above all credits, counter-claims and set-offs, in the amount of $9343.48 for fees and costs due [plaintiff]. That [plaintiff] thereupon, and in pursuance of said account stated, rendered a statement to defendants for said stated sum of $9343.48." In support of this finding the record discloses the following:

Plaintiff testified that he conferred in early January 1958 with defendant Matthews regarding the subject of the indebtedness. This conference is referred to in a letter dated January 10, from plaintiff to Matthews, as having taken place "the other day." It is also referred to in a letter dated January 13, from plaintiff to Matthews, in which plaintiff writes that at that conference he "reviewed the entire situation of services and accruals of fees earned and due me." In reply to plaintiff's January 10 letter, Matthews dispatched a letter dated January 13, enclosing a $1,000 payment "to apply on account." Plaintiff then sent defendants a statement in the amount of $11,093.48, a figure arrived at after subtracting the $1,000 payment. Plaintiff testified that a "few days" after January 13, "a little after the middle of January," he had a telephone conversation of some length with Matthews. This conversation took place at the request of de-

fendants who "wanted to discuss the figures." Plaintiff further testified that "as a result of [this] conference the amount was reduced" to $9,343.48. On the same day, following the telephone conversation, plaintiff testified that he sent a statement in the form of a letter to Matthews which, after some preliminary references to their telephone conversation, stated the corrected balance to be $9,343.48. Nothing of importance appears to have occurred between the sending of this letter and February 10, at which time plaintiff sent a letter to defendants purporting to give notice of various matters and demanding payment "in the stated balance due of $9343.48." It is this evidence upon which the trial court apparently relied in finding that defendants had promised to pay an agreed-upon amount of $9,343.48.

It will be noted that the trial court found that an account was stated "shortly after January 15." That this finding refers to the telephone conversation between Matthews and plaintiff becomes clear when we compare plaintiff's testimony that that conversation took place "a little after the middle of January." The question then becomes whether the trial judge could justifiably infer an agreement as to the amount to be paid. In support of this inference we have the following evidence. Early in January the parties conferred concerning defendants' obligation. At that time it appears that they hit upon a tentative amount. This inference finds support in the fact of the January payment of $1,000. It is not likely that one would make such a substantial payment on a debt of an as yet unsettled amount. The receipt of the $1,000 was then acknowledged by plaintiff in his January 14 statement for $11,093.48. In another effort to get this figure reduced, defendants requested another discussion with plaintiff. This discussion took place over the telephone shortly after January 15. Plaintiff testified that at that time they "deleted items which we had just added on by way of interest and other items" and arrived at the figure of $9,343.48.[1] A statement was then mailed on the same day by plaintiff to defendants for that amount. Payment not having been received, a second statement in that amount was sent on February 10.

---

[1] The "items just added" apparently refer to the January 14 statement for $11,093.48. Included in that figure is an item labelled "interest" of $1,147.50. Subtracting the latter from the former we have $9,845.98. The difference between $9,845.98 and $9,343.48 apparently represents the "other items" of which plaintiff spoke.

Viewed in this light the evidence amply justifies the inference that early in January substantial agreement as to a balance was reached upon which part payment was made, and that upon the request of defendants, plaintiff consented to reduce the balance due still further, and $9,343.48 was agreed upon. Further support is gained from the fact that it was also found that at no time prior to this litigation did defendants deny that they were indebted in the amount of $9,343.48 nor did they object to the statements rendered in that amount. Since defendants had not previously exhibited reticence in negotiating the extent of the obligation, this fact, while not conclusive by itself, could reasonably be considered corroborative of an agreement when considered together with the other evidence.

After February 10, but before February 21, a meeting took place between plaintiff and defendants. At this meeting a demand was made for the $9,343.48. A transfer of property was discussed as a means of payment. As a result of this meeting a letter dated February 21 was prepared by plaintiff's office. It was addressed to plaintiff and read: ''We are indebted to you in the sum of $10,000 over and above all credits, counterclaims or set-offs,'' and provided for a transfer of property as payment. Defendants never signed this letter but insisted on changes. The result was a letter dated March 14 which is substantially the same as the February 21 letter except that ''$10,000'' became ''approximately $10,000, the exact amount . . . subject to verification and audit.'' This letter is signed by defendant Phillips as agent for Sunnyvale Realty Company. Defendants rely on this letter as proof that an amount had never been agreed upon, or if it had, that it was supplanted with a new agreement which was not sufficiently exact to constitute an account stated. ▮ But it was found by the trial court that at the last, mentioned meeting plaintiff ''repeated his demand for payment of the $9343.48 due him, and that the amount of 'approximately $10,000.00' was agreed upon to include additional costs and expenses which would accrue to [plaintiff] *in the event* the indebtedness were settled and liquidat[ed] by transfer of certain encumbered parcels of property in said agreement described.'' (Emphasis added.) This finding is supported by: plaintiff's denial on cross-examination that he increased his demand from $9,343.48 to $10,000 at that meeting; his testimony that he said at the meeting that if they were going to pay it off in property instead of cash he wanted $10,000;

and the contents of the letter of March 14 stating that the property proposed to be transferred was encumbered. It is implied in the above finding that the parties did not intend to nullify their former agreement, constituting the account stated, but only to specify new terms *in the event* the obligation was paid in a manner which never, in fact, occurred.

Defendants attempt to demonstrate that no agreement had been reached by pointing to statements for various amounts sent by plaintiff up to and including January 14. Since an account was found to have been stated after January 15, such evidence is obviously irrelevant for that purpose.

Defendants' remaining contention is that certain superseded pleadings contain allegations of an account stated for an amount other than $9,343.48. Defendants are not explicit as to what effect they would have the court give these pleadings, but in *Meyer* v. *State Board of Equalization,* 42 Cal. 2d 376, 384-385 [267 P.2d 257] it was stated that "By a long line of decisions, it is established in this state that such a pleading is not admissible as direct evidence to establish a fact in issue. [Citations] The reason for this view is that the use of superseded pleadings to such extent as to embarrass the amending party is in derogation of the policy of liberality in permitting amendments to pleadings." The opinion goes on to say that where a party has testified, a superseded pleading may be offered for the purpose of impeachment. It does not appear that such an offer was made, but regardless, the trial judge chose in his discretion to believe plaintiff's testimony.

The judgment is affirmed.

Ashburn, J., and McMurray, J. pro tem.,* concurred.

---

*Assigned by Chairman of Judicial Council.